In the Matter of the Judicial Settlement of the Account of ALEX-
   ANDER F. WALSH and Another, as Executors, etc., of MILES E.
   HODGES, Deceased.

Surrogate's Court, Saratoga County, November 11, 1926.

Wills — construction — testator by will directed payment by executors
   of $200 per annum to widow during her lifetime from particular fund
   of $1,000 — upon widow's death said fund was given to executors in
   trust to be divided equally between them — testator intended executors
   to pay out of income or principal of particular fund of $1,000, $200 per
   annum during life of widow — commissions — executors not entitled
   to commissions where will contained no power of sale and they have
   not received, distributed or delivered real estate bequeathed.

A will, by which the testator, after directing the payment by his executors of
   $200 per annum to his widow during her lifetime from a specific fund of $1,000,
   recited that upon said widow's death said fund should be given to his executors,

in trust to be divided equally between them, must be construed as directing the payment by the executors out of income or principal or both of the particular fund, $200 per annum during the lifetime of testator's widow.

The executors are not entitled to commissions where the real estate passed to residuary legatees under the will and not through the executors, since they have not received, distributed or delivered the real estate bequeathed. Nor are they entitled to commissions upon the specific legacies given under the will.

PROCEEDING for an accounting involving construction of will.

*Rowe & Walsh,* for the accounting petitioners.

*Spencer B. Eddy,* for B. Jennie Hodges and Florence Smith.

*John W. Nichols,* special guardian for William Burton Green, an infant.

TUCK, S.    Miles E. Hodges died a resident of the town of Wilton, Saratoga county, leaving a last will and testament, which was admitted to probate by the Surrogate's Court of Saratoga county March 19, 1923, and letters testamentary were upon that same day issued to Alexander F. Walsh and Frederick Pratt, the executors named in said will, who had duly qualified. The executors proceeded with the administration of the estate of said deceased and thereafter and on the 17th day of June, 1926, they filed an account of their proceedings and a petition praying for the judicial settlement thereof. A citation was issued and all of the parties required by law to be cited were brought in and all of the parties interested in the will are now in court. Upon the return of the citation the executors appeared in person and by Rowe & Walsh, their attorneys; B. Jennie Hodges appeared by Spencer B. Eddy, her attorney, and John W. Nichols was appointed special guardian of William Burton Green, the residuary legatee.

Two questions have arisen and are at issue in this proceeding. The first is in relation to the construction to be placed upon paragraphs " ninth," " eleventh " and " twelfth " of the will.

The second relates to the commissions of the executors and the property which should make up the amount upon which the commissions shall be based.

The paragraphs of the decedent's will for which a construction is asked are as follows:

" *Ninth.* I give and bequeath unto my wife, B. Jennie Hodges, the sum of Two Hundred dollars per annum during the term of her natural life, to be paid by my said executors beginning one year after my decease from funds herein provided therefor. This bequest, however, is made in lieu of dower."

By the 10th paragraph of the will the residuary estate was given to William Burton Green.

"*Eleventh.* I give and bequeath unto my Executors herein-after named, the sum of One thousand dollars, in trust, however, to invest and reinvest the same and to pay the annuity herein provided.

"*Twelfth.* Upon the death of my said wife, I give and bequeath the One thousand dollars which is hereinabove directed to be paid to them in trust, absolutely and forever, to be divided between them equally, share and share alike."

On March 17, 1923, B. Jennie Hodges assigned to Burton H. Green, general guardian of the residuary legatee, all her interest in the estate of the decedent, including her interest in the annuity given in paragraph " ninth " of the will.

The executors contend that it was the intention of the testator that his widow should receive the sum of $200 annually during her life and that upon her death the persons named as executors should receive the sum of $1,000 from his estate in equal shares.

In support of their contention they cite the case of *McNaughton* v. *McNaughton* (34 N. Y. 201) which holds as follows: " When two interests in the same subject matter are given to successive donees, the words, if they admit of it, should be so construed as to avoid incongruity, and to secure to each the interest intended by the testator."

A reading of the decision, however, in this case discloses that the principle above stated is not established by the decision. In that case decedent left his personal property to his widow, with the right of the use of his real estate during her life, and upon her death the real estate was to be sold and the balance of the avails to be distributed to certain other parties. During his lifetime the decedent sold his real estate, so that upon his death his estate consisted entirely of personal property.

The court determined that a devise of real estate embraces only such property as the decedent owned at the time of his decease answering the descriptive terms of the will, and consequently determined that the legatees who were to receive the balance of the avails of the sale of the real estate receive nothing under the will.

The petitioners contend that the will should be so construed to give to the annuitant, or her assignees, the income from the fund of $1,000, and that the balance of the annuity should be payable out of the general estate and not from the specific fund.

In the case of annuities, there is no deviation in the authorities upon the proposition that an annuity is not the income from a fund but that it is a simple general legacy of a certain and deter-mined sum of money, payable annually, or as the will may direct, and if a fund is established for the payment of the annuity out of

the income thereof the balance of the annuity must be made up from other property.

There are two cases reported upon which a construction of the provisions of this will may properly be based.

In *Matter of Haviland* (49 Hun, 301) the testator, by his will, directed his executors to invest such sum as would net $1,000 and from the sum so invested to pay decedent's wife the sum of $1,000 per year from the date of his death.

The executors set up a fund of $10,000 to produce this income, and the balance of the estate, some $85,000, was divided amongst the other legatees.

At the time of the application made in *Matter of Haviland* to the court, all that remained of the principal of said sum of $10,000 was $4,350, on which there was almost $3,000 of accrued interest and the amount of the arrears due the widow was claimed by her to be in excess of $10,000. She applied to the Surrogate's Court for an order directing the payment to her of the whole principal sum, which was refused.

The General Term held that this was error, and that the decree of the surrogate should be so modified as to direct the payment of the entire residue of said fund to the widow on account of her annuity.

In the case of *Rowe* v. *Lansing* (53 Hun, 210) it appears that Wendell Lansing died, leaving a will wherein he gave to his wife, Hannah M. Lansing, the use and income of the house and lot which he owned and occupied on River street, in Keeseville, N. Y., and also the use and income of the farm known as the Brewer place, to have and to hold during her natural life. He then provided that upon and from the death of his wife, her mother, Mary Tuttle, should have the use and income of the same house and lot and farm during her natural life. He authorized his executors, in their discretion, to sell the farm and invest the proceeds and pay the income from the proceeds to his widow during her life and upon her death to her mother, Mary Tuttle, during life.

The provisions of the will for the widow were declared to be in lieu of dower.

He then gave legacies to his children, aggregating $4,400, and directed them to have preference and priority over any other gift or legacy.

He then gave to his widow, Hannah M. Lansing, the use during her natural life of the farm implements, tools, team, cattle and stock on his farm, to an amount not to exceed $1,000. He then made this provision:

"*Ninth.* I also direct my said executors to pay to my said wife,

Hannah M. Lansing, annually, during her natural life, the sum of $100, the said sum of $100 to be paid to my said wife in each and every year after my decease so long as she shall live."

The residue of the estate he gave to his son Abraham Lansing.

The executors paid the $4,400 of legacies to the decedent's children and erected a monument for him, and sold the farm known as the Brewer place for $2,243 net, and invested that sum, and sold the farming implements for $705.80 net, and invested that sum and paid the widow $100, being one year's annuity. They then came to settle their account and it appeared that there was no income sufficient to pay the annuity of $100 per annum without resort to other funds to make up the deficiency thereof.

Judge LANDON, in his opinion, states that the testator intended that the payment to his widow of $100 annually during her life should be made as directed out of his personal estate, the principal to be applied to that purpose if the income should fail, and the court points out that the testator did not say it should be paid out of income.

And the court further states that he pointed out no principal from which to raise this annuity, and in conclusion the court determines that the payment of the annuity must be at the expense of the residuary estate.

Although somewhat similar, there are marked differences between *Matter of Haviland* and *Rowe* v. *Lansing*, which cannot escape a careful study.

Where a particular fund was set aside, or appointed, it was the principal of that fund which was directed to be used to make up the deficiency of income.

Where no fund was appointed the deficiency in the income was directed to be made up out of the residuary estate.

In our present case, we have a particular fund from which the annuity is directed to be paid, and it is to be observed that in making the payment of the annuity no direction is contained that it shall be paid from income, but it is directed that the annuity shall be paid from that particular fund.

It is the opinion of the court that the paragraphs which we have set out hereinbefore should be construed to mean that the executors are to pay out of the fund $1,000, which is given to them in trust, out of income or principal, or both, as necessities may require, the sum of $200 per annum during the life of the testator's wife, B. Jennie Hodges.

Upon the question of commissions, an examination of the will shows that specific legacies are given by the " fifth," " sixth," " seventh " and " eighth " paragraphs of the will.

The real estate of the decedent appears to pass under the " tenth "

Supreme Court, January, 1926.            [Vol. 128

paragraph of the will, which is a bequest of all the rest, residue and remainder of decedent's property. The will contains no power of sale to be exercised by the executors and they have not attempted to exercise such power.

Consequently, the real estate passes to the residuary legatee under the devise contained in the will and not through the executors. They are, therefore, not entitled to commissions upon the amount or value of the real estate since they have not received, distributed or delivered the real estate.

The executors are further not entitled to commissions upon the specific legacies given in the will.

Let a decree be submitted accordingly, upon notice.