In the Matter of the Accounting of GENESEE VALLEY TRUST COMPANY, as Trustee under the Will of DIANA E. MARTIN, Deceased.

Surrogate's Court, Monroe County, November 15, 1946.

*Olive Whiting* for trustee, petitioner.

*Henry S. McGonegal* and *Joseph B. Boyle* for County of Monroe, creditor.

*William H. Emerson, Corporation Counsel (William J. Stevens* of counsel), for City of Rochester, creditor.

*Joseph A. Cox* for Public Administrator of New York County, as administrator of the estate of Estelle S. Greer, deceased, life beneficiary.

*Robert F. MacCameron* for First Presbyterian Church of Rochester, remainderman.

WITMER, S. The life beneficiary of the testamentary trust herein having died, the trustee has presented its accounts for judicial settlement, and has brought in the County of Monroe, the City of Rochester and the administrator of the estate of the deceased life beneficiary, Estelle Sprague Greer, as interested parties. It appears that on or about July 31, 1930, the trustee received from the estate of Diana E. Martin, deceased, as an asset forming a part of this trust, a mortgage in the sum of $6,100 on certain real property at No. 22 Ford Street, in the City of Rochester, New York; that during the depression years the mortgagor failed to make the required payments pursuant to said mortgage, and the trustee accepted a deed of the mortgaged property in payment of the mortgage, which deed was dated September 16, 1936, and was duly recorded on October 27, 1936. The deed designated the trustee-grantee as follows: " The Genesee Valley Trust Company, as Trustee under the Last Will and Testament of Diana E. Martin." The title to said realty has remained in the trustee under such designation since that time. By the eighth clause of her will, the testatrix created the trust herein and provided that out of " the accummulations [*sic*] thereof and so much of the principal or the whole as may be necessary " the trustee pay to Emily Estelle Greer (also known as Estelle Sprague Greer), the life beneficiary, $10 " each and every week * * * during the term of her natural life ". The accumulations were more than sufficient to pay the taxes on the Ford Street property, but the trustee did not pay them. The trustee made substantial payments to the life beneficiary under the trust provision, but at the date of death of the beneficiary the trustee was $1,630.55 in arrears on account of such weekly payments. In the meantime, it appears that the trustee had made unsuccessful efforts to sell the Ford Street property, and in an effort to reduce the tax accumulations it razed the building on the property in 1942.

The City of Rochester and County of Monroe claim that under section 71 of the Tax Law the trustee is personally liable as such trustee to pay the taxes levied upon the Ford Street property for the years 1936 through 1946. The county also relies upon section 8 of chapter 721 of the Laws of 1944. Originally the city also made claim under the special provisions of its charter, but it is well settled that section 71 of the Tax Law is the only authority for the imposition of personal liability for taxes. (*Village of Massapequa Park* v. *M. P. V. Sites,* 278

N. Y. 28, 31.) The county claims the sum of $337.39, plus interest from March 14, 1946. The city originally claimed the sum of $1,027.43, but later reduced its claim to $556.53.

Section 71 of the Tax Law provides in part as follows: " If the owner of a parcel or portion of real property is a resident of the tax district in which such parcel or portion of real property is assessed, and his name is correctly entered on the assessment-roll, he shall be personally liable for the tax assessed against such parcel or portion of real property. If any person shall neglect or refuse to pay any tax imposed on him, the collector may levy upon any personal property in the county belonging to or in the possession of any person who ought to pay the tax, and cause the same to be sold at public auction for the payment of such tax, and the fees and expenses of collection * * *."

In respect of the city taxes it is acknowledged that the name of the trustee was not on the tax rolls until the year 1938, and it has continued thereon since that time under the same designation as on the county tax rolls. In respect of the county taxes it is acknowledged that the name of the trustee was not on the tax rolls until the year 1937 for the county tax levied for the year 1937. On the 1937 and 1938 county tax rolls the name appeared as " Genesee Valley Trust Company as Tr. Diana E. Martin, 45 Exchange St." On the 1939 through 1946 county tax rolls the name appeared as "Genesee Valley Trust Co. as trustee for Diana E. Martin."

Clearly, under section 71 of the Tax Law, the county's claim for 1936 taxes is without merit, as is the city's original claim for any taxes prior to the year 1938. The situation, however, is somewhat different with respect to the remaining tax claims. In *Village of Lynbrook* v. *Otto* (266 N. Y. 308, 310) the court said: " Prior to 1911 it had been the long-settled policy of this State to make the resident owner of land, as well as the land itself, liable for taxes assessed upon it. While it was the land itself which was taxable, the tax was assessed against the resident owner or occupant; and it was that assessment which created not only a lien upon the property but also a personal liability against the person assessed. ' * * * the ultimate tax levied by reason of the assessment is a charge against the person assessed, and is to be collected from his personal estate; * * *. Hence it is, that the action of the assessors in assessing lands to a person initiates a charge upon him personally.' (*Hilton* v. *Fonda,* 86 N. Y. 339, 346.)" In *Matter of Ueck* (286 N. Y. 1, 7) the court said; " The general policy of the State is to collect

unpaid real estate taxes by levy upon the personalty of the owner, when that is permitted by section 71 of the Tax Law (Cons. Laws, ch. 60), or by a sale of the property. (Tax Law, arts. 6 and 7.)"

It has been held that property must be assessed to the legal owner and not to the equitable beneficiary (*People ex rel. National Commercial Bank* v. *Lewis,* 179 Misc. 140, 143; *People ex rel. Barnard College* v. *Wells,* 46 Misc. 13), hence it was proper to assess the property to the trustee. Under section 71 of the Tax Law and the foregoing decisions it only remains to ascertain whether the trustee is a resident of the city of Rochester and county of Monroe and whether its " name is correctly entered on the assessment-rolls ".

The trustee, a domestic banking corporation with its principal offices located in the city of Rochester, New York, is, on general principles, a resident of the city of Rochester and county of Monroe, and it has been so held. (*City of Utica* v. *Park Mills Corporation,* 41 N. Y. S. 2d 248.)

The question as to the correctness of the name on the assessment roll is to be considered in the light of the purpose of the requirement and whether there has been a substantial compliance to accomplish such purpose. The decisions show that the purpose of the provision is to give adequate notice to the taxpayer that he is the one charged with the assessment, and in what capacity. This was particularly important and greater care in description was needed when assessments were made upon personal property as well as on real property. With the repeal of the laws for taxing personal property (L. 1933, ch. 470), assessments are made only against real property. Less difficulty is experienced in describing real property so that the owner will know that it has been assessed against him. In this case the tax rolls show that the bank has been charged with the assessment, that it is charged as trustee, and in relation to the estate of Diana E. Martin. It is true that the assessment does not refer to the " estate " of Diana E. Martin or to the names of the beneficiaries under the trust herein set up under the will of Diana E. Martin, deceased. But such details certainly are not needed by the trustee in order for it to ascertain the property or the capacity in which it is charged with the assessment. The designation, therefore, is sufficient. The language of the court in *People ex rel. Pike* v. *Barker* (86 Hun 283, 285–286, affd. 146 N. Y. 404; see also same opinion by the court below at Special Term, 11 Misc. 262) is pertinent herein: " The public has a most vital interest in sustaining the taxing power, for upon

it rests the very existence of government, and while the individual right of the taxpayer to have the law substantially complied with in the process through which his proportion of the burden is laid upon him, is undoubted, the public is equally entitled to the benefit of a fair and reasonable construction in support of the tax and to have the tax sustained where there has been no substantial departure from statutory requirement. * * * They insist, however, upon a legal exactness of definition in characterizing the particular representative capacity in which they are assessed, as if the stress of the statute was upon this instead of upon the separation of one class of assessments from the other. No such exactness is required. If the representative character of the relators is indicated with substantial correctness the statute has been complied with, and the fact that the description is inartificial and without legal nicety does not vitiate the assessment. Tax laws are not to be treated as nicely laid traps to snare unwary assessors, but should be upheld, and the acts of public officers under them sustained where there has been a substantial compliance with all the requirements designed for the protection of the taxpayer. As was said by PECKHAM, J., in *Overing* v. *Foote* (43 N. Y. 290–297), concerning assessors in making up tax lists: ' In construing the acts of these officers we should not sacrifice substance to form, nor lose sight of the spirit and purpose of the laws they are required to execute.' ''

In *People ex rel. Burr* v. *Feitner* (59 App. Div. 233, affd. 167 N. Y. 621) the Appellate Division said at pages 235–236: '' This appears much like an effort to refine a statute to the point of impracticability, and such a construction can serve no purpose contemplated by the law, nor is it necessary to protect any right of the taxpayer. It is conceded by the relator that he is both an executor and a trustee of the estate of James Rodwell; that he has personal property of such estate in his possession or control to the amount of $23,000; and the assessment roll contains the name of the relator, with the addition ' of his representative character,' and he is assessed $20,000. It certainly cannot be necessary, under such circumstances, for the commissioners of taxes to inquire as to the exact status of administration of the estate before making out the assessment roll, nor is there any good reason why the assessment should be declared illegal and void because the assessment does not divide up the matter in conformity with the existing trusts, so long as the assessment is against the person who is actually in control of such funds, and who is designated upon the rolls by the addition of his representative character.'' (See, also, *People ex rel. McHarg*

v. *Gaus,* 169 N. Y. 19; *People ex rel. Cammann* v. *Feitner,* 61 App. Div. 115, affd. 168 N. Y. 646; *In re Hartshorn,* 63 Hun 624, opinion in 17 N. Y. S. 567; *McLean* v. *Horn,* 62 Hun 622, opinion in 17 N. Y. S. 119; *Wheeler* v. *Anthony,* 10 Wend. 346.)

Accordingly, the claims of the City of Rochester from and including the year 1938 are allowed. The same would be true of the claims of the County of Monroe for the years 1937 through 1946, but for the decision of the Court of Appeals in *Matter of Ueck* (286 N. Y. 1, *supra*) and the decision by my predecessor in *Matter of Frederick E. Wyatt* (opinion filed in this office on July 24, 1941, FEELY, S.).

It appears from the claim filed by the County of Monroe that the taxes upon said property remained unpaid in August of each year in which the tax first became payable (except for the year 1946, this proceeding having come on for hearing before the annual date in August for the sale of such tax); that pursuant to law each year the county offered the property for sale for non-payment of the taxes; and that the county bought in the property upon such sales and took unto itself a certificate for " Redemption of Lands Sold by the Treasurer of Monroe County for the General State and County Tax." Such certificates are attached to the county's claim filed herein. Under the last-mentioned decisions the county tax for the year 1937 was cancelled by the sale in August, 1938. Those decisions are adopted herein, and the county's personal claim for such tax is, therefore, denied.

Under the decision of this court in *Matter of Wood* (187 Misc. 972) the county taxes for the years 1938 through 1945 have likewise been cancelled by the sale of the property in August of the respective years, and hence the county's personal claim therefor is denied. The court does not take judicial notice that the sale of the 1946 county tax took place in the usual manner, but if it is stipulated that it did, whether or not the purchase was made by the county, the claim for the 1946 tax must also be denied. If no sale to collect said 1946 tax has occurred, the claim of the county thereon is allowed. The county's contention that the ruling in the *Ueck* case (*supra*) applies only in respect of a decedent is not sustained.

Of course, the county's lien upon property by virtue of its purchase of certificates of tax sale is not disturbed hereby and the county may, with the City of Rochester, proceed to liquidate its interests thereunder.

We turn now to the claim of the administrator of the estate of the life beneficiary. As noted earlier the testatrix directed the trustee to pay to the life beneficiary from principal and income

$10 each week for life, and to pay $300 for the beneficiary's funeral. Because the income of the fund was inadequate to yield the amount of such weekly payments and the principal was largely "frozen", the trustee was in arrears on the payments at the time of the beneficiary's death. The remainderman asserts that the testatrix intended to benefit the life beneficiary personally and not her estate, and that any installments not paid at the time of the beneficiary's death are no longer payable. Such contention cannot be upheld. This is not a discretionary trust. Moreover, the will expressly directs payments out of principal as well as income, if the income is insufficient to make the payments.

Such provision in this will created an annuity payable weekly to Emily Estelle Greer for life. (*People's Trust Co.* v. *Flynn,* 188 N. Y. 385; *Buchanan* v. *Little,* 154 N. Y. 147; *Matter of Anderson,* 143 Misc. 250, 255; *Matter of Smathers,* 133 Misc. 812, 816; *Gould* v. *Gould,* 126 Misc. 54, 69; 2 Jessup-Redfield on Law and Practice in the Surrogate's Courts, §§ 927, 927a.) If the income of such a trust is inadequate, the principal thereof must be used to maintain the payments during the life of the annuitant. (*Matter of Hodges,* 128 Misc. 211; *Matter of Kohler,* 96 Misc. 433, 441.)

In a proper case the value of such annuity is subject to computation at any given time during the life of the annuitant. (*People's Trust Co.* v. *Flynn, supra; Buchanan* v. *Little, supra,* p. 152.) The right to receive the annuity payments is assignable by the annuitant. (*Matter of Chamberlin,* 289 N. Y. 456, 461–462; *Wells* v. *Squires,* 117 App. Div. 502, affd. 191 N. Y. 529; *Matter of Fowler,* 263 App. Div. 255, 259; Real Property Law, § 103; Personal Property Law, § 15.) These latter propositions postulate the duty of the trustee to continue the weekly payments during the life of the annuitant, and the right of the latter to require the trustee to make such payments from the trust funds. It is elemental that such property right survives the annuitant, and that her administrator may enforce it. (Decedent Estate Law, §§ 116, 117.) The claim made by the administrator of the estate of Emily Estelle Greer (also known as Estelle Sprague Greer), the deceased annuitant, for the unpaid installments is, therefore, allowed in full. However, the claim for $300 for funeral, is disallowed, because Schedule D of the trustee's account herein shows that such sum has been paid, and no showing has been made that the accounts in this respect are incorrect.

Submit decree accordingly.