83 N.J. Super. 411 (1964)
200 A.2d 330
IN THE MATTER OF THE JUDICIAL SETTLEMENT OF THE FIRST AND FINAL ACCOUNT OF THE PROCEEDINGS OF THE TRUST COMPANY OF MORRIS COUNTY (FORMERLY THE MORRISTOWN TRUST COMPANY) UNDER A DEED OF TRUST OF WILLIAM CHILDS (NOW DECEASED) DATED DECEMBER 9, 1937.
Superior Court of New Jersey, Appellate Division.
Argued April 6, 1964.
Decided May 7, 1964.
*412 Before Judges GOLDMANN, KILKENNY and COLLESTER.
Mr. Robert Carey, Jr. argued the cause for appellants Hooper, Reed and Sargent (Messrs. Carey & Jardine, attorneys).
*413 Mr. William R. Soons argued the cause for appellants Tuthill and McAliley (Messrs. Soons & Soons, attorneys).
Mr. Arthur B. Smith argued the cause for all respondents and appeared for Somerset Hospital.
Messrs. Schenck, Smith & King, appeared for respondent Morristown Memorial Hospital.
Messrs. Bowers, Rinehart & Murphy, appeared for respondent Trust Company of Morris County.
Messrs. Freeman & O'Donnell, appeared for respondent All Souls Hospital.
Messrs. Osborne, Cornish & Scheck, appeared for respondent Bonnie Brae Farm for Boys.
Mr. Arthur J. Sills, Attorney General of New Jersey, appeared on behalf of the State of New Jersey.
The opinion of the court was delivered by COLLESTER, J.A.D.
This is an appeal from a judgment of the Chancery Division construing a deed of trust executed by William Childs, now deceased, holding that the trust had terminated and that the trustee should now pay over the corpus and undistributed income to the beneficiaries of the corpus, four charitable organizations.
An appeal was taken from said judgment by defendants Catherine Murray Hooper, Harriet Hooper Reed and Victoria Moran Sargent, three of the five surviving income beneficiaries named pursuant to the provisions of the deed of trust. An appeal was also taken by defendants Agnes M. Tuthill and Alexander McAliley, beneficiaries of the estate of Elsie P. McAliley (who was one of eight residuary legatees under the will of William Childs), and Howard S. Tuthill, as executor of the estate of Elsie P. McAliley. The appeals have been consolidated.
*414 The respondents are plaintiff Trust Company of Morris County (formerly Morristown Trust Company), the trustee named in the deed of trust, and four charitable institutions, the defendants Somerset Hospital, Morristown Memorial Hospital, All Souls Hospital and Bonnie Brae Farm for Boys. The four charities receive the corpus of the trust upon its termination. Respondent Attorney General of New Jersey was joined as a party defendant below because charitable trusts are involved.
The facts are not in dispute. William Childs of Bernardsville, New Jersey, established an inter vivos trust on December 9, 1937, by exercising a deed of trust. It provided, inter alia, as follows:
"First: Trustee * * * shall pay over the net income in the following manner:
A. To and among the following relatives and friends of the Settlor, or the survivor of them, any and all amounts which the Settlor during his lifetime shall, in his absolute discretion, designate, and after the death of the Settlor, to and among the said following beneficiaries, or the survivor of them, in such amounts as Settlor's wife, Victoria Ludgate Childs, and Trustee shall in their absolute discretion agree to be proper for the support and maintenance of said following beneficiaries: [Nine beneficiaries are then named.]"
Under the terms of Article First, paragraph B, the settlor was to receive the balance of the income after distribution under paragraph A, above, as he requested it; and after his death such undistributed income was to be paid to the settlor's wife as she requested it.
Paragraph C provided that upon the death of both the settlor and his wife, the trustee was authorized to make distribution of the income to the surviving beneficiaries named in paragraph A, in such amounts as it deemed proper, with the balance thereof to go to the four charitable institutions, which were also the ultimate beneficiaries of the corpus.
William Childs died on May 22, 1938, five months after he executed the deed of trust, without having directed income payments to be made to the potential income beneficiaries *415 named in Article First (A) and without naming any additional income beneficiaries as provided for under Article Twelfth, which reads:
"Twelfth: Settlor during his lifetime, and thereafter his wife, Victoria Ludgate Childs, during her lifetime, shall have the right to add additional beneficiaries to those named in A above, and upon such terms or conditions as imposed by Settlor or Settlor's wife at the time of such designation. * * *"
His wife thereafter, and until her death on September 17, 1952, designated which beneficiaries were to receive a share of the distributed income. In the exercise of their discretion, as provided for in Article First (A), Mrs. Childs and the trustee directed that but five of the nine original named beneficiaries were to receive income. Following her death in 1952, the trustee continued to make the income payments in the manner designated by Mrs. Childs.
During her lifetime, and in the exercise of the authority given her by her husband under Article Twelfth, Mrs. Childs had named six additional income beneficiaries.
On September 12, 1961 Helen Hendrick, the last survivor of the original income beneficiaries listed by the settlor in Article First (A), died. The trustee thereupon brought an action for a judicial settlement of its first and final accounting. Plaintiff trustee construed the trust as having terminated upon the death of the last survivor of the nine beneficiaries named by the settlor in Article First (A), and contended that the principal should be distributed among the four charitable institutions. This position was concurred in by the defendant charitable institutions and the Attorney General.
The trial court held that the trust terminated when the last of the nine beneficiaries named by the settlor in Article First (A) died, basing its conclusion upon Article Second of the deed of trust, which provides:
"Upon the death of the survivor of the beneficiaries named in [paragraph] A above, this trust shall terminate and the principal of *416 said trust fund, together with any undistributed income and all rentals, issues and profits, shall be distributed and paid over in equal shares to and among the following charitable institutions: [the four defendant charities are here named.]"
The present controversy results from a construction of the provisions of Articles First (A), Second and Twelfth of the deed of trust. Appellants allege that the trial court erred in its determination that the trust terminated upon the death of Helen Hendrick and contend that said trust will not terminate until the death of the last survivor of the beneficiaries designated by Mrs. Childs. Respondents contend that Articles First and Second of the deed of trust control and fix the time of termination of the trust and the distribution of the corpus and undistributed income, without reference to Article Twelfth. They argue that the beneficiaries named by Mrs. Childs under the authority of Article Twelfth were income beneficiaries per autre vie; that their right to receive income was limited by the lives of the original potential income beneficiaries listed by the settlor in Article First (A). They assert that upon the death of Helen Hendrick, the last survivor of the beneficiaries named in Article First (A), the rights of the added beneficiaries to the income ceased and the trust terminated.
In determining the meaning and effect of the deed of trust our primary inquiry must be to ascertain the intent of the settlor from the language of the instrument itself. Fidelity Union Trust Co. v. Heller, 18 N.J. Super. 49, 54 (App. Div. 1952). In doing so, our judicial function in construing such an instrument is to ascertain and give effect to the probable intention of the settlor. See Fidelity Union Trust Co. v. Robert, 67 N.J. Super. 564, 572 (App. Div. 1961), modified 36 N.J. 561 (1962), involving the construction of a will, where the Supreme Court stated:
"[I]n ascertaining the subjective intent of the testator, courts will give primary emphasis to his dominant plan and purpose as they appear from the entirety of his will when read and considered in the light of the surrounding facts and circumstances. * * * So far as *417 the situation fairly permits, courts will ascribe to the testator, `those impulses which are common to human nature, and will construe the will so as to effectuate those impulses.'" (36 N.J., at pp. 564-565)
The same approach is appropriate in construing the settlor's trust instrument.
When the deed of trust in the present case is read in the light of these rules, the reasonable conclusion to be drawn is that if the settlor reserved unto himself, as he did, the right to add income beneficiaries to those listed in Article First (A), he intended that the trust would not terminate until that list was exhausted by the death of the last survivor of them. So, too, when he gave his wife the power to add to that list, it is reasonable to conclude that as she added income beneficiaries, they became as much a part of Article First (A) as if they were originally listed therein by the settlor himself.
It seems clear that the primary objective and dominant plan of the settlor was to provide for the maintenance and support of certain relatives and friends when such aid, in the judgment of the settlor or his wife, was needed. Thus, under Article First (A), the settlor, and upon his death his wife, were empowered to exercise such judgment by designating those persons whom they determined should receive part of the income. Under Article Twelfth the settlor during his lifetime, and thereafter his wife during her lifetime, had the right to add to the list of beneficiaries originally named in Article First (A).
As stated, the settlor died five months after he executed the deed of trust without designating that any of the beneficiaries he had listed in Article First (A) should receive income. In our view it is illogical to conclude that if the settlor had lived, and had exercised the power to add beneficiaries under the provisions of Article Twelfth, such additional beneficiaries would receive income only during the lives of the potential beneficiaries originally listed by him in Article First (A). If he intended to limit such income per autre vie, he could have said so. If such an interpretation is made then *418 one must conclude that the settlor intended to create two classes of beneficiaries. We do not so construe the trust agreement.
Furthermore, if such an interpretation is made, the settlor, desiring to add a beneficiary to the list set forth in Article First (A) with the same status as those named therein, of necessity would have had to amend or supplement the trust agreement. There would have been no need to have included Article Twelfth in the instrument. That article unquestionably was inserted by the settlor to give him, and later his wife, flexibility in determining who should receive the income. Thus, income beneficiaries could be added as desired. The change in beneficiaries could be made by a mere designation or direction to the trustee, without the necessity of amending the trust document. (Witness the fact that by this simple procedure Mrs. Childs made 17 separate designations over a period of 14 years following her husband's death.)
There is also a clear indication that the trustee has not always held to the strict construction of the term "survivor [or survivors] of the beneficiaries named in A above" on which it now bases its argument that the trust has terminated. In Article First (C) it is provided:
"The Trustee, after the death of the Settlor and of the Settlor's wife, Victoria Ludgate Childs, shall have full authority to make such distribution of the said net income of the trust fund to and among the survivor or survivors of the beneficiaries named in A above as shall in the discretion of the Trustee be deemed proper for their support and maintenance. * * *" (Emphasis added)
Following the death of Mrs. Childs on September 17, 1952, the trustee continued to make payments of income to the additional beneficiaries designated by Mrs. Childs and not listed by the settlor in Article First (A), for a period of some nine years. To be consistent with its present interpretation of "survivor or survivors of the beneficiaries named in A above," the trustee should have ceased distribution to the added beneficiaries upon the death of Mrs. Childs. By making *419 the payments it did the trustee would thus be subject to a surcharge. The trustee unquestionably made such payments because it deemed such added beneficiaries to be included in the list set forth in Article First (A).
In view of the power granted to Mrs. Childs under Article First (A) and Article Twelfth, and the settlor's obvious intention to rely upon her discretion in the designation of beneficiaries who would receive income, whether they were originally named in Article First (A) or added under the authority of Article Twelfth, there is no reason to treat the additional beneficiaries named by her differently from those who might have been named by her husband. It would have been relatively simple for the settlor to have provided in specific terms that the original nine beneficiaries were to take so long as each of them might live, while the additional beneficiaries would take for a period determined by the life of the survivor of the original nine. No such language is contained in the deed of trust and the circumstances do not compel such an implication.
As we read the deed of trust it is apparent that the dominant plan of the settlor was to first provide for the individual beneficiaries to be selected by himself and his wife. His secondary objective was to provide for the charitable institutions when the beneficiaries, so selected, were living no longer. The trial court's decision subordinated the settlor's paramount intention and purpose to the secondary purpose. In arriving at the decision, the court limited its conclusion to a consideration of only Articles First (A) and Second. In our view, by adopting such strict construction in disregard of the undoubted purpose of Article Twelfth, the court fell into error.
Accordingly, we conclude that the trust has not terminated and that the trustee should continue to pay to the survivors of the supplemented list of beneficiaries the income necessary for their support and maintenance.
On this appeal no party raises the issue as to whether the trust violates the rule against perpetuities and no one appeals *420 from the determination of the Chancery Division judge that it does not violate the rule. Nor does anyone question the status of the charitable institutions as beneficiaries of the surplus income and, eventually, the corpus. Thus, we decide this appeal on the single question as to whether the trust has or has not terminated by reason of the death of the last survivor of the nine income beneficiaries listed by the settlor. We have concluded that it has not yet terminated.
The judgment of the Chancery Division, insofar as it held that this trust has terminated, is reversed.