## Buzby Trust

*Philip A. Bregy*, of *MacCoy, Evans & Lewis*, for accountant.

*Robert C. Grasberger* and *F. Morse Archer, Jr.*, for executor of estate of G. Harold Buzby, deceased.

*Alan Reeve Hunt*, for intestate heirs of Louis M. Buzby.

KLEIN, A. J., February 1, 1973.—Louis M. Buzby, the settlor, executed a deed of trust on December 19, 1938, in which he conveyed certain assets to Provident Trust Company of Philadelphia (now Provident National Bank).

The reason for filing the present account is the

death on October 23, 1969, of Rosalie M. Buzby, whereupon all trusts under the deed terminated and the balance of principal became distributable. First County National Bank and Trust Company is stated to have been appointed executor of her estate. . . .

Settlor provided for the payment of the entire net income to himself during his lifetime. Upon his death, after making gifts totalling $31,000 to his wife and two charities, he directed that the net income from the residue be paid to his wife "until her remarriage or death, whichever shall first occur." He provided further in item SECOND (III), that:

"(3) Upon the remarriage or death, whichever shall first occur, of the Settlor's wife, or upon the Settlor's death if she shall not survive him:

"(a) Any and all interest which the Trustee may then have in the business of C. M. Buzby & Son shall be assigned, transferred and set over absolutely to the Settlor's nephew, G. HAROLD BUZBY, if then living.

"(b) The balance of the principal of this trust shall be divided into two equal shares and:

"The net income from one of such shares shall be paid, in monthly or other convenient instalments, to ROSALIE M. BUZBY, wife of G. Harold Buzby, until her death, and thereupon the principal of such share shall be added to and thereafter held, applied and ultimately disposed of in like manner as if it had originally formed part of the other share.

"The net income derived from the other share shall be paid, in monthly or other convenient instalments, to the Settlor's grandniece, DORIS BUZBY McCABE, during her lifetime, and upon her death the principal of such share shall be paid over to such of her issue, per stirpes, as shall then be living or, in default of such issue, to the Settlor's nephew, G. HAROLD BUZBY, if then living.

"(4) If at any time prior to the final distribution of the principal of this trust there shall not be living any person entitled thereto or to the income therefrom pursuant to any of the foregoing provisions, such principal shall be paid over to such person or persons as would have been entitled to inherit the same from the Settlor under the intestate laws of the State of New Jersey, if he had died at such time, domiciled in said State, possessed of such principal, intestate, unmarried and without issue."

The business of C. M. Buzby & Son was dissolved by the settlor and never formed part of the trust estate.

Louis M. Buzby, the settlor, died June 8, 1941. His grandniece, Doris Buzby McCabe, daughter of settlor's nephew, G. Harold Buzby, and his wife, Rosalie M. Buzby, died without issue on July 14, 1944. Ada M. Buzby, settlor's wife, died March 27, 1967, not having remarried. G. Harold Buzby died September 25, 1968. Rosalie M. Buzby, the last survivor of the beneficiaries designated by name, died October 23, 1969.

G. Harold Buzby and Rosalie M. Buzby were divorced in 1945 and G. Harold Buzby then married Mabel, May 11, 1946. She survives and is the principal beneficiary under his will. No issue resulted from that marriage.

When settlor's wife, Ada, died in 1967, the principal of the one-half share under the second paragraph of Item SECOND (III)(3)(b), which would have been set aside for Doris Buzby McCabe and her issue, was paid to her father, G. Harold Buzby, as Doris predeceased Ada without issue. The other half of the principal was retained in trust for the benefit of G. Harold Buzby's former wife, Rosalie, who was still living. When she died in 1969, G. Harold was already dead. It is the disposition of the latter half that is our present concern.

The accountant, in the statement of proposed distribution, states that the question presented for adjudication is whether the principal is now payable to the estate of G. Harold Buzby or to the persons who would be heirs at law of the settlor under the New Jersey Intestate Act if he had died on October 23, 1969.

Robert C. Grasberger and with him F. Morse Archer, Jr., of the New Jersey bar, contend: (1) that the dispositive provisions of the trust instrument must be interpreted in accordance with the law of the State of New Jersey where settlor resided; and (2) that under New Jersey law the share from which Rosalie M. Buzby was receiving income now passes to the estate of her divorced husband, G. Harold Buzby, although he predeceased her.

Alan R. Hunt and with him Hugh M. Emory claim the fund for settlor's surviving next of kin under the New Jersey Intestate Act. They contend that this conclusion must be reached whether the question is decided under Pennsylvania law or New Jersey law.

Testimony was received concerning the domicile of Louis M. Buzby, the settlor, which leaves little doubt that he lived in Winona, N. J., continuously from 1908 until his death in 1941, and the auditing judge so finds as a fact.

Counsel for the estate of G. Harold Buzby rely principally upon Pennington Trust, 421 Pa. 334, 219 A. 2d 353 (1966), and Restatement, Conflict of Laws, in support of their contention that the provisions of the deed must be interpreted in accordance with the law of New Jersey.

In our opinion, it is immaterial whether this deed is construed under the law of New Jersey or the law of Pennsylvania. The result would be no different as similar principles of law are applicable in both States.

In Horvath Estate, 446 Pa. 484 (1972), Mr. Chief Justice Jones said, at page 486:

"The primary consideration in the construction and interpretation of wills is that testator's intent, if ascertainable, should prevail. E.g., Pearson Estate, 442 Pa. 172, 180, 275 A. 2d 336, 339 (1971); McKinney Estate, 435 Pa. 608, 612, 258 A. 2d 632, 634 (1969); Carter Estate, 435 Pa. 492, 496-7, 257 A. 2d 843, 845 (1969). This intention is to be garnered, if at all, from an examination of the testamentary language and scheme of the will. E.g., Woodward Estate, 407 Pa. 638, 182 A. 2d 732 (1962). 'If the language employed by the testator in disposing of his estate is plain and clearly discloses his intention, the will interprets itself and no rules of construction are necessary to aid in its interpretation.' England Estate, 414 Pa. 115, 200 A. 2d 897 (1964). See, also, Lewis Estate, 407 Pa. 518, 180 A. 2d 919 (1962); Buzby Estate, 386 Pa. 1, 123 A. 2d 723 (1956)."

In re Voorhees, 93 N. J. Super. 293, 298-300, 225 A. 2d 710, 712, 713 (1967), the Appellate Division of the Superior Court of New Jersey said:

"In ascertaining the intention of settlor the 'primary inquiry' must be directed to 'the language of the instrument itself.' In re Trust Co. of Morris County, 83 N.J. Super. 411, 416 (App. Div. 1964); In re Central Home Trust Co., 61 N.J. Super. 109, 115 (Ch. Div. 1960); Fidelity Union Trust Co. v. Heller, 18 N.J. Super. 49, 54 (App. Div. 1952). In so doing, we seek 'to ascertain and give effect to the probable intention of the settlor.' In re Trust Co. of Morris County, supra. When the instrument itself fails to indicate intent, 'resort may be had to extrinsic evidence to determine the terms of the trust.' 2 Scott, op. cit., §164.1, pp. 1156-1157.

". . .

"The current view of probable intent requires that a trust or will be construed in a manner consonant with what the donor would have done had she envisioned the unexpected problem. This entails viewing the document as a whole in order to see if it evinces a 'dominant plan and purpose' when read in the light of the surrounding circumstances, ascribing to the settlor those impulses 'common to human nature' and considering the competent extrinsic evidence as to the settlor's intent."

With regard to the construction of the language of a testamentary writing, New Jersey law is seemingly more liberal than Pennsylvania. In Clapp, N. J. Practice, Vol. 5, sec. 198, the New Jersey rule is stated as follows:

"There are indications in the cases that a word must be given its plain meaning unless such an interpretation would be repugnant to other words in the will. But this is clearly not the law of New Jersey. . . . The true rule . . . is that plain and technical meanings always yield to the testator's intentions, provided those intentions would be drawn from the words of the will, read in the light of extrinsic circumstances and the testator's utterances other than direct statements by him as to his intentions. . . . [T]he true test is, what was the testator's probable intention, without giving any stress at all to the plain meaning of the word."

In case of doubt, a will is to be construed as favoring kindred as against strangers: Rosencrans v. Fry, 12 N. J. 88, 95 A. 2d 905, 909 (1953); In re Estate of Nixon, 71 N. J. Super. 450, 462, 177 A. 2d 292, 298 (1962). In re Smith's Estate, 104 N. J. Super. 382, 387, 388, 250 A. 2d 143, 147 (1969), we find:

"Our primary function in construing a will is to ascertain and give effect to the intention of the testator. In re Cook, 44 N. J. 1, 6 (1965); In re Conway,

92 N. J. Super. 428, 434 (App. Div. 1966), remanded for modification 50 N. J. 525 (1967). In considering doubtful provisions in a will, an interpretation benefiting kindred is favored as against strangers. Rosencrans v. Fry, 12 N. J. 88, 95 (1953). Except in a plain case where the intent of a testator to disinherit is clear, the heirs at law of a testator will not be disinherited. Creech v. McVaugh, 140 N. J. Eq. 272, 279 (Ch. 1947)."

We note, parenthetically, that in both Pennsylvania and New Jersey the principles of construction of testamentary disposition apply with equal force to the construction of inter vivos trusts: Pew Trust, 447 Pa. 62, 285 A. 2d 101 (1971); Fidelity Union Trust Company v. Robert, 36 N. J. 561, 178 A. 2d 185 (1962); In re Voorhees, supra.

Another basic principle applicable to interpretation of testamentary writings in Pennsylvania is that the instrument must be so construed, if possible, as to give effect to every word, sentence or paragraph employed by the testator and a construction which renders any of these nugatory and futile must be rejected: Vandergrift Estate, 406 Pa. 14, 177 A. 2d 432 (1962); Lamb Estate, 445 Pa. 323, 285 A. 2d 163 (1971); Hollenbaugh Estate, 402 Pa. 256, 167 A. 2d 270 (1961); Collins Estate, 393 Pa. 519, 143 A. 2d 45 (1958); Carmany Estate, 357 Pa. 296, 53 A. 2d 731 (1947). This is also the law in New Jersey: Case v. Roebling, 42 N. J. Super. 545, 127 A. 2d 409 (1956); Zeigenfus v. Snelbaker, 38 N. J. Super. 304, 118 A. 2d 876 (1955).

Applying these principles to the present case leads to the conclusion that the estate of G. Harold Buzby is not entitled to the share it claims.

A study of the deed in its entirety makes it evident that settlor intended only living blood relatives to share in the principal of the trust estate. In Item SECOND (III)(3)(a) and (3)(b) the gifts to G. Harold

Buzby are made upon the condition that he be "then living" when the gifts of principal are to be distributed, and we construe this to mean *all* gifts of principal, including the share from which Rosalie was to receive the income.

The language in Item SECOND (III)(4) is crystal clear and requires no interpretation. "If at any time prior to the final distribution of this trust there shall not be living any person entitled thereto or to the income therefrom pursuant to any of the foregoing provisions, such principal shall be paid over to such person or persons as would have been entitled to inherit the same from the Settlor under the intestate laws of the State of New Jersey, if he had died at such time, domiciled in said State, possessed of such principal, intestate, unmarried and without issue."

The time for final distribution of the share upon which Rosalie had been receiving the income was on October 23, 1969. G. Harold Buzby was not living on that date. Ergo, his estate is not entitled to this share. Any other construction would make the language in subparagraph (4), supra, meaningless.

The settlor's intent is so manifest and his expression of it so clear that it is difficult to see how it could have been made plainer. We repeat what Mr. Chief Justice Bell said so well in Dinkey Estate, 403 Pa. 179, 168 A. 2d 337 (1961), at page 183:

"Notwithstanding appellant's able argument, the testator's intent is so clear that there is no valid or justifiable reason for resorting to rules or canons of construction which, in the last analysis, have been judicially created merely to aid a Court in ascertaining a testator's testamentary intent."

The cases cited by counsel for the estate of G. Harold Buzby concerning early vesting of interests in estates are inapposite. True, G. Harold Buzby's interest in

Rosalie's share vested when Doris died but it was vested upon the condition that he be living when that share was ready for final distribution. Since he was not living on that date, his interest was divested.

G. Harold Buzby's interest was an executory or contingent remainder. He took a fee defeasible upon his death in the lifetime of his former wife, Rosalie. If he had survived her, his estate would have become a fee simple absolute. Upon his death prior to the time for "the final distribution" of the trust, the estate goes to the settlor's intestate heirs. See 2 Hunter O. C. Commonplace Book (2d Ed.), Estates 7(c), page 185.

Counsel for the executor vigorously contend that, "the evidence at the hearing of November 17 shows that G. Harold Buzby was far more likely an object of settlor's bounty than were his relatives by intestacy." With this, we agree. However, the controversy is not between G. Harold Buzby and settlor's intestate heirs; it is between his personal representatives and the intestate heirs. If G. Harold Buzby had survived his former wife, he would have been entitled to the share in question. But, he predeceased her. A study of the trust deed clearly indicates that G. Harold Buzby, his wife, Rosalie, and his daughter Doris and her issue, were the primary objects of his concern. But Harold and Rosalie were divorced after settlor's death and Harold married Mabel. Nothing in this record even remotely suggests that settlor ever knew of the existence of this woman. Apparently, the events which actually occurred created just the type of situation that settlor wished to guard against. It is certainly not likely that he intended to prefer this stranger to him and to his blood over his blood relatives, his heirs under the intestate laws. . . .

And now, February 1, 1973, the account is confirmed nisi.