JOSEPH WARREN, PLAINTIFF, v. TOWNSHIP OF
JACKSON, DEFENDANT.

Tax Court of New Jersey

September 30, 1980.

*Joseph Warren* plaintiff pro se.

*Joseph Martone* for defendant Township of Jackson.

RIMM, J. T. C.

This local property tax case presents two issues to the court: one is the value of the taxpayer's property; the other is the right of a taxpayer of the age of 65 or more years to a deduction against the taxes assessed against his property.

The property involved is Lot 13 in Block 154–26, located on Route 537 and Alyson Road. It consists of 10.17 acres, with 483 feet of frontage on Route 537 and 1,015 feet of frontage on Alyson Road. It is zoned highway development B3 and is improved with a single–family residence. For the tax year 1975 the assessment was:

| Land | $ | 80,500 |
|------|---|--------|
| Improvements | | 35,500 |
| Total | $ | 116,000 |

By judgment of the Ocean County Board of Taxation, the assessment was reduced as follows:

| Land | $ | 45,800 |
|------|---|--------|
| Improvements | | 35,500 |
| Total | $ | 81,300 |

The same original assessment was made and the same judgment, reducing the assessment, was entered by the board for the tax year 1976.

The taxpayer appealed to the Division of Tax Appeals seeking a further reduction of the assessment for the year 1975. The municipality filed a petition for the year 1975 seeking a reinstatement of the original assessment. Both parties similarly filed petitions with the division for the tax year 1976, each seeking the same relief sought for the tax year 1975. In addition, the municipality filed a petition for the tax year 1976 seeking to rescind the senior citizen deduction granted to the taxpayer. The matter was tried before the division but transferred to the Tax Court, *N.J.S.A.* 2A:3A–26, for determination on the record made in the division. *R.* 1:12–3(a).

Both the taxpayer and the municipality are appellants bound by the rule that a presumption of correctness exists in favor of a county board's judgment and an appellant has the burden of ultimate persuasion to upset such judgment. *Riverview Gardens v. North Arlington Borough*, 9 *N.J.* 167, 87 *A.2d* 425 (1952); *Glenwood Realty Co., Inc. v. East Orange*, 78 *N.J.Super.* 67, 187 *A.2d* 602 (App.Div.1963).

The taxpayer was his only witness. During his testimony, certain exhibits were marked in evidence. One was a list of alleged comparable sales and copies of some of the deeds referred to in the list. Another was a residential appraisal report prepared by an appraiser for an area bank for a proposed mortgage application. The appraiser did not appear at the hearing to testify and no weight is given to the appraisal. The

comparable sales, 11 in number, referred to in the exhibit and in the taxpayer's testimony were all at some distance from the subject property. The sales data were for dates earlier than October 1 of the pretax year for each year under appeal, the dates of the sales varying from June 19, 1973 to April 4, 1974. Each comparable sale was in a residential zone, some indicated as "Residential–15" and some indicated as "Residential–20." The comparable sales varied in size from three acres to 783 acres. Some of the properties referred to in the list of comparable sales did not have road frontage similar to the subject property. Finally, the list of comparable sales was prepared as part of a "Market Data Approach" by an appraiser for two completely different and unrelated properties and is so noted, in spite of the taxpayer's testimony that he and his wife gathered the data contained in the exhibit from information at the county seat and that his brother typed it. Based on these comparable sales the taxpayer stated that, in his opinion, his property was worth $50,000 on October 1, 1974. In giving this opinion, the witness did not discuss the factors to be used in sales comparisons, namely, time of the sale, location of the property, physical characteristics of the property, or the terms and conditions of the sale, nor explain adjustments made, if any, for these factors in formulating his opinion of the value of the subject property based on the comparable sales.

Although, the so–called "presumption" has no artificial probative force once substantial evidence to the contrary is adduced, *Samuel Hird & Sons, Inc. v. Garfield*, 87 *N.J.Super.* 65, 208 *A.2d* 153 (App.Div.1965), there is no substantial, competent and credible evidence before the court on behalf of the taxpayer to make a finding of true value.

On behalf of the municipality, its assessor testified that the market value of the property is $108,750. He arrived at that value by dividing the subject property into three parts:

(a) The front 2.3 acres may be used for commercial purposes. The assessor said that this area has a value of $28,750. The value is based on comparison with two sales in the adjoining

township in a similar zone approximately one mile from the subject. The comparable sales reflected values of $23,000 per acre and $45,000 per acre, or, as the assessor said, "$25,000 an acre." The land was regarded by the assessor as "100% at least better than the land in Jackson," that is to say, the taxpayer's land.

(b) An area behind the taxpayer's house can be developed into six residential lots. Based on a number of sales, not identified, described or analyzed for the court's benefit, the assessor testified that a residential lot's value in Jackson Township is in a range from $7,300 to $8,300 a lot. He then discounted the value to $6,000 per lot to allow for the cost of improvements and overhead and concluded that this part of the subject property had a value of $36,000.

(c) Finally, the residence itself on a one–acre lot was valued at "about $44,000." This value was based on four comparable sales ranging from $41,000 to $60,000, after adjustments. Again, the comparable sales were not identified, described nor analyzed, and the nature and amount of the adjustments were not indicated.

The assessor's testimony did not describe his comparable sales; he did not give any information concerning them on the basis of which his adjustments could be evaluated; and he did not indicate the relationship of the comparable sales to the subject property by way of the times of the sales; the locations of the properties; the physical characteristics of the properties, and the terms and conditions of the comparable sales. He also did not indicate the basis of his discounting the comparable sales to the value of the six residential lots nor how much land would be lost from use for streets or other ingress and egress to and from the six lots. No consideration was given to any problems which might be encountered in rezoning the subject property or in obtaining a variance; the loss in value of each residential lot because of its close proximity to a commercial use; and absorption time into the market for residential lots in that location. In

fact, there is no evidence that the area is in a transitional state to indicate that valuation based on residential use is at all realistic. The assessor stated that the basis of his opinion was his attempt to resolve what is the highest and best use of the property. In valuing property, the highest and best use is limited by current zoning unless there is a probability of a zoning change permitting the highest and best use. *American Institute of Real Estate Appraisers, The Appraisal of Real Estate* (7th ed. 1978), 43–45, 49, 136–138; *American Institute of Real Estate Appraisers, Real Estate Appraisal Practice* (1958), 8–9. There is no evidence before the court of any zoning except highway development B3 nor any testimony that a change in zoning is reasonably to be expected.

Finally the assessor "tested" his conclusion of value by comparison with a sale in 1974 of a property across the street from the subject property for $62,000. The comparable property consists of approximately ten acres, two acres of which are frontage which can be used for commercial purposes and were valued at $12,500 per acre, with a six residential lot potential at $6,000 per lot for an overall total of $61,000. To this amount the assessor would then add his value of the Warren residence. The test, of course, assumes the values used by the assessor in valuing the subject property are correct but does not prove them. There is also on the comparable property a Cape Cod house which is rented and to which no value was attributed because the comparable property was considered to be in transition to a development use. The difficulty with this conclusion is that there is no evidence of such transition before the court. In this case, therefore, the municipality is in the same situation as the taxpayer: there is no substantial, competent and credible evidence before the court on behalf of the municipality to make a finding of true value.

On the valuation issue, the Clerk of the Tax Court will enter a judgment for the tax years 1975 and 1976 fixing the assessments at:

| | | |
|---|---|---|
| Land | $ | 45,800 |
| Improvements | | 35,500 |
| Total | $ | 81,300 |

The municipality also seeks to rescind the senior citizen deduction granted the taxpayer for the tax year 1976. The position of the municipality is based solely on a document recorded in 1968. No challenge is made based on income or age. The record discloses testimony concerning a "deed" from the taxpayer to himself as a trustee. Upon completion of the oral testimony, the judge in the division directed that a copy of the deed be delivered to him. A copy of a "Declaration of Trust" dated July 14, 1966 and recorded in the office of the Clerk of Ocean County on November 14, 1968 in Book 2851 of Deeds, Page 400, was delivered to the division and is in the case file. The Declaration will be considered in evidence and a part of the record before the court.

■ The constitutional and statutory provisions pertinent to this issue before the court are:

The Legislature may, from time to time, enact laws granting an annual deduction from the amount of any tax bill for taxes on the real property of any citizen and resident of this State of the age of 65 or more years, . . . residing in a dwelling house owned by him. . . . [N.J.Const. (1947), Art. VIII, § I, par. 4]

Every person, a citizen and a resident of this State of the age of 65 or more years, . . ., having an income not in excess of $5,000 per year and residing in a dwelling house owned by him which is a constituent part of his real property, shall be entitled . . . to a deduction against the tax or taxes assessed against such real property. . . . [N.J.S.A. 54:4–8.41]

Right to claim a deduction hereunder shall extend to property the title to which is held by a partnership, to the extent of the claimant's interest as a partner therein, and by a guardian, trustee, committee, conservator or other fiduciary for any person who would otherwise be entitled to claim such deduction hereunder, but not to property the title to which is held by a corporation. [N.J.S.A. 54:4–8.46; emphasis supplied]

In accordance with these provisions, if the person for whom the trustee holds the title to the subject property "would otherwise be entitled to claim" the senior citizen deduction, the right to claim the deduction shall extend to the property in the trustee's name.

It appears from the Declaration that the settlors, that is, the taxpayer and his wife, originally took title to the subject proper-

ty in their own names in 1953. By the described Declaration they acknowledged and declared that they held the subject property in trust for the benefit of two third parties, apparently their children, who do not reside on the property, with the property to go to the third parties upon the death of the survivor of the settlors. Among other things, the settlors reserved to themselves the power and right to mortgage the property; to collect any rental or other income which may accrue from the trust property and to pay such income to themselves as individuals; and to amend or revoke the trust without the consent of any beneficiary, with the sale of the property by the settlors to constitute such a revocation.

In the construction of a trust instrument the primary inquiry is to ascertain the intent of the settlor from the terms of the instrument itself. In doing so, the judicial function is to ascertain and give effect to the probable intention of the settlor. *In re Trust Co. of Morris County*, 83 *N.J.Super.* 411, 416, 200 *A.* 2d 330 (App.Div.1964). It has also been held that the principles applicable to will construction should also apply to the construction of trusts. *Id.* at 417, 200 *A.*2d 330. The basic guidelines were stated in *Fidelity Union Trust Co. v. Robert*, 36 *N.J.* 561, 178 *A.*2d 185 (1962). The subjective intent of the party is to be determined from the document when read and considered in the light of surrounding facts and circumstances. A court is permitted to construe the document through competent extrinsic evidence. *In re Estate of Burke*, 48 *N.J.* 50, 63, 222 *A.*2d 273 (1966); *Fidelity Union Trust Co. v. Robert, supra*, 36 *N.J.* at 564, 178 *A.*2d 185, modifying and affirming 67 *N.J.Super.* 564, 171 *A.* 2d 348 (App.Div.1961); *DeBrabant v. Commercial Trust Co.*, 113 *N.J.Eq.* 215, 166 *A.* 533 (Ch.1933). The conduct of the settlor prior to and subsequent to the execution of the trust is a relevant consideration in ascertaining his intent. *Clark v. Judge*, 84 *N.J.Super.* 35, 55, 200 *A.*2d 801 (Ch.Div.1964) aff'd o.b. 44 *N.J.* 550, 210 *A.*2d 415 (1965).

The settlors resided on the subject property during 1976, the tax year in question, and had resided there for some time

prior to 1976. They maintained the property and paid the real estate taxes due on the property. They prosecuted and defended the several matters before this court. From the facts and the provisions of the Declaration I find that the settlors were also beneficiaries for whom the property was held in trust. Specifically, the broad reservation by the settlors of the power and right to collect any rental or other income which may accrue from the trust property and to pay such income to themselves as individuals includes the right to possess the property, to reside in it and to make it their "principal and permanent home." *N.J. A.C.* 18:14–1.1. The settlor's rights are even greater than a life tenant, to whom the deduction is allowed if the tenant is responsible for the payment of taxes. *N.J.A.C.* 18:14–2.8.

Although the Declaration does not expressly give the settlors the right to possess the subject property, such form should not be permitted to overcome the substance of their interest. The well–recognized rule in both state and federal taxation is that the substance, not the form, of the transaction should govern. *Weiss v. Stearn*, 265 *U.S.* 242, 44 *S.Ct.* 490, 68 *L.Ed.* 1001 (1923); *Lincoln National Life Insurance Co. v. McCarthy*, 10 *Ill.*2d 489, 140 *N.E.*2d 687 (Sup.Ct.1957); *R. H. Macy & Co. v. Bates*, 280 *App.Div.* 292, 114 *N.Y.S.*2d 143 (App.Div.1952); *In re Dobbs Houses, Inc.*, 53 *Hawaii* 195, 490 *P.*2d 902 (Sup.Ct.1971). The settlors are persons who "would otherwise be entitled to claim" the senior citizen deduction.

The quoted portion of *N.J.S.A.* 54:4–8.46 appears to be a recognition of the common law rule that a trustee is the owner of the trust res for the purposes of taxation. *E. g., Greenough v. Tax Assessors of City of Newport*, 71 *R.I.* 477, 47 *A.*2d 625, 629 (Sup.Ct.1946) aff'd 331 *U.S.* 486, 67 *S.Ct.* 1400, 91 *L.Ed.* 1621 (1947). This is the general rule and thus the tax is assessed to the trustee. *N.J.S.A.* 54:4–24; *In re Martin's Will*, 187 *Misc.* 980, 66 *N.Y.S.*2d 679 (Sur.Ct.1946). The statutory provision relating to the trustee therefore fits within the constitutional requirement of ownership. The common law, unless "superseded, altered or repealed" is included in the Constitution. *State v.*

*Culver*, 23 *N.J.* 495, 503, 129 *A.*2d 715 (1957). The trustee is entitled to the deduction.

The Clerk of the Tax Court will enter judgment dismissing the application of the municipality which sought to rescind the senior citizen deduction for the subject property for the tax year 1976.