Complainants, uncles, aunts and cousins of one Robert M. Pedrick, deceased, seek to establish a resulting trust in certain moneys in the hands of the Guarantee Trust Company of Atlantic City, administrator of said Pedrick.
Robert M. Pedrick, in his lifetime, executed a trust agreement under date of May 21st, 1930, naming the Guarantee Trust Company as trustee. Under the terms of the trust agreement, Pedrick, hereinafter called the trustor, delivered to the Guarantee Trust Company, hereinafter called the trustee, certain life insurance policies theretofore purchased by the trustor, insuring his life.
The trust agreement provided that the trustee should use the proceeds of the policies to pay debts of the trustor, both as an individual and as a partner in "Pedrick's Sport Shop," with the further provision that after the payment of the debts aforesaid by the trustee,
"The trustee shall hold, in trust, of the balance of said proceeds, such a sum of money as shall be sufficient to pay to the Grantor's father and mother, or the survivor of them, in equal shares, the sum of Nine Hundred ($900.00) Dollars per annum which amount the Trustee shall pay to them or the survivor of them until the death of the survivor of them. Upon the death ofthe survivor of the Grantor's father and mother, the aforesaidsum held in trust for their benefit shall be paid to theGrantor's executor or administrator. The balance of the aforesaidinsurance proceeds, after the payment of the aforesaid debts andthe establishment of the said trust to produce Nine Hundred
($900.00) Dollars per annum, shall likewise be paid to theGrantor's executor or administrator."
After the death of the trustor, on April 20th, 1931, the trustee proceeded to the collection of the insurance moneys and to the payment of debts, as directed, and paid to the father and mother, beneficiaries, the income allotted to them during their joint lives, and on the death of trustor's father, paid the income to the mother until her death, and now has in its hands an unexpended balance amounting to approximately $14,000.
It is this fund which complainants say the trustee should pay over to them on the theory of a resulting trust, which *Page 397 
arises by reason of the trustor having failed to name the beneficial owners of the fund after the death of those named as life beneficiaries, to wit, the father and mother of trustor.
Joseph Pedrick, the father of the trustor, died May 1st, 1932, a little over a year after the death of his son, leaving a will in which he gave all of his property, real and personal, to his widow, Susanna J. Pedrick, the mother of the trustor. The mother died February 11th, 1935, leaving a will, making the First National Bank and Trust Company of Woodbury, New Jersey, executor.
Trustor died intestate, leaving him surviving his mother and father, but no widow or children or brothers or sisters and no issue of child or of any brother or sister, so that under P.L.1918 ch. 63 p. 180 § 169 subdiv. 3, the mother and father succeeded to the personal estate of their son.
It is the contention of complainants, "that the failure of the trustor to direct his executors or administrators as to the disposition of the trust moneys after the death of his father and mother operates to create a resulting trust arising out of the failure of the express trust, and that the resulting trust inures to the benefit of complainants, the contention being that thecorpus does not begin to descend until after the death of the survivor of the two life tenants and then goes to such persons as would be the next of kin of the trustor, if he had survived his parents and then had died intestate."
This contention may not be upheld if the trust as created did not fail. Was there a properly created express trust as to the remainder over?
Trustor said that upon the death of his mother and father "the aforesaid sum held in trust for their benefit," as well as "the balance of the aforesaid insurance proceeds," after payment of debts and establishing the trust fund to produce $900 per annum, "shall be paid to the grantor's executor or administrator."
The administrator, if the trust is upheld, would take the fund in trust for trustor's legal representatives, i.e., to pay over to them that portion thereof to which, by law, they were entitled. At the time of the death of the trustor, those *Page 398 
entitled to the fund were the mother and father. They were entitled to it by operation of law and not by virtue of the trust agreement. True, the administrator took the fund in trust for them but they were entitled thereto by virtue of the law of distribution and not by reason of the trust agreement. 2 Bogerton Trusts 1444 § 468.
It would seem, therefore, that the express trust has not failed and that on the death of the trustor his mother and father were seized of an equitable estate in the fund in its entirety. The trustee mentioned in the agreement held the legal title to the fund in trust (a) to pay debts; (b) to set aside a trust fund to produce $900 per annum; (c) to pay over all moneys to administrator on death of trustor.
It would also seem to follow that on the death of the son the father and mother were entitled to have paid to them the entire trust fund. Their life estate was augmented by the remainder over and the lesser estate merged with the greater.
It would seem to be clear that at the time of the death of Robert M. Pedrick, leaving only his father and mother surviving as heirs and next of kin, that they became vested as of the date of his death with all of his property.
Under the trust agreement there was created a life estate in the father and mother for their lifetime, but on the date of the son's death the remainder of this estate vested in the father and mother, so that they had, on the death of their son, both a life estate and the remainder over.
The rule laid down in 2 Bl. Com. is:
"It may be proper to observe, that whenever a greater estate and a less coincide and meet in one and the same person, without any intermediate estate, the less is immediately annihilated, or, in the law phrase, is said to be merged, that is, sunk or drowned in the greater."
See Holcomb v. Lake, 24 N.J. Law 686; affirmed,25 N.J. Law 605; Den, ex dem. Wills v. Cooper, 25 N.J. Law 137; Bower v.Driggers, 75 S.E. Rep. 318.
 Pedrajas v. Bloomfield Trust Co., 101 N.J. Eq. 105;affirmed, Ibid. 803, is directly in point with the present case and clearly determines that, "where the time of payment is *Page 399 
postponed only for the purpose of letting in a life interest, the remainder interests vest immediately on the death of the testator."
See, also, L'Hommedieu v. L'Hommedieu, 98 N.J. Eq. 554;Brooks v. Davis, 82 N.J. Eq. 118; Fisch v. Fisch, 105 N.J. Eq. 746.
It would seem that there is no doubt that the time of vesting of a remainder of an estate, even though there may be existing life estates, is as of the time of decedent's death, and that the distribution to the beneficiaries was only postponed for the purpose of letting in the intermediate estate. See Redmond v.Gummere, 94 N.J. Eq. 216; Sampson v. Sampson, 96 N.J. Eq. 198.
Of course, the life estates in Mr. and Mrs. Pedrick were terminated on the date of their respective deaths, which distinguishes the instant case from the holding of Vice-Chancellor Berry in In re Nilsson, 112 N.J. Eq. 445.
It may be well at this point to say that the First National Bank and Trust Company of Woodbury, executor of the estate of Susanna J. Pedrick (trustor's mother) filed its bill in this court against the Guarantee Trust Company as trustee and administrator of Robert M. Pedrick, and that in that suit complainant failed to make the present complainant a party defendant, so that the decree therein, which was in conformity with the foregoing pronouncement, is not binding on the complainant herein, but that said Guarantee Trust Company has filed an answer herein alleging that the present complainant is estopped from maintaining its present bill because with full knowledge of the prior suit and the purpose thereof, they sat idly by without attempt to advise the court of their claim to the moneys in question. Be this as it may, the court has before it a question which may be decided without depriving complainants of their day in court and without prejudice to the Guarantee Trust Company, which still has the moneys in question on hand and not disposed of under the former decree.
If, as complainants contend, the trust failed by reason of trustor's not having declared what his administrator should *Page 400 
do with the trust fund, are complainants entitled to receive that fund or does it go to the executor of trustor's mother?
There is no question that a resulting trust arises whenever an express voluntary trust fails, in whole or in part, for any reason, such as lack of named beneficiaries, the naming ofcestuis as to part of the property only, uncertainty as to named beneficiaries, illegality of the trust, indefiniteness or impossibility of accomplishment, but in case an express trust does fail, in whole or in part, for any reason, the equitable interest automatically returns to the settlor and his successors in interest and the beneficial interest is considered as never having left the settlor. 2 Bogert on Trusts § 468; 1 Perry onTrusts § 152. So that in case of settlor's death, his representatives, as they exist as of that time, take this undisposed of beneficial interest as a part of the estate of the settlor, and the right to take is not held in suspense until the happening of a future event. The beneficial interest vests on the death of the settlor. This beneficial interest was not "a mere equity. It is an equitable estate," in the money created by the proceeds of the life insurance and on the death of the trustor this equitable estate vested in those entitled to take under the statute of distribution and they had a right, on the death of the trustor, to compel an assignment of the equitable estate by the trustee, the holder of the legal estate. 3 Pom. Eq. Jur. (4thed.) 2367, 2368 § 1043.
It has been generally held in such cases that,
"If there is a failure of the express trust, and no express or implied provision in the instrument for any gift to take effect on the happening of such failure, the equitable interest automatically returns to the settlor or his successors in interest. * * * If these resulting trusts are based on intent, it is an artificial intent. The presumption of a desire for a return of the property to the settlor or successors is conclusive, and not rebuttable." 2 Bogert on Trusts 1444 § 468.
The same authority continues and says:
"If the express trust was created by deed, and fails, the resulting trust is for the settlor, if living, or for his heirs if he died intestate and the property under the trust was realty, or his next of kin if the property was personalty and the settlor died intestate. If the settlor *Page 401 
of the inter vivos trust died testate, his legatees or devisees succeed to his resulting trust interests.
"If the express trust which has failed was testamentary, similar doctrines prevail. The heirs or residuary devisees take the resulting interest in realty and the next of kin or residuary legatees the like interest in personalty. It would seem that the actual heirs or next of kin should take, and not those who would have been the heirs or next of kin of the settlor if he had died when the failure of the trust became apparent."
Section 411 of Restatement of Law of Trusts 1258, gives the general rule:
"Where the owner of property gratuitously transfers it and properly manifests an intention that the transferee should hold the property in trust but the trust fails, the transferee holds the trust estate upon a resulting trust for the transferor or his estate, unless the transferor properly manifested an intention that no resulting trust should arise * * *."
Skellenger's Executors v. Skellenger's Executor, 32 N.J. Eq. 659,
was a case in which the trust was for the benefit of the widow for life and then to pay legacies, the payment of which did not exhaust the principal, in which case the court declared a resulting trust as to the residue and said (at p. 661):
"No doctrine of equity jurisprudence is more firmly established than that, where personal estate is given by will to a trustee, upon certain trusts, and the purposes of the trust do not exhaust the whole estate, or the trust fails, either in whole or in part, by lapse or otherwise, the trustee shall not take the surplus for his own benefit, * * * but a trust results in favor of those who are entitled under the statute of distribution as the next of kin of the testator."
The court further said (at p. 662):
"The income of this fund passed by the will, but no beneficial interest in the corpus itself. As to that the will is silent and inoperative, and it therefore stood, on the testator's death, in exactly the same condition that it would if he had left no will. As to that, it must be declared, as a matter of law, that he had no will." *Page 402 
In the instant case the trustor died during the lifetime of his mother and father, leaving as aforesaid no children or issue thereof and no brother or sister, so that the mother and father took under the statute of distribution. P.L. 1918 ch. 63 p. 180
§ 169 subdiv. 3. The father, by his will, gave to his widow, the mother of trustor, the father's interest, and on the death of the widow she, by her will, gave the combined interest to her trustee, the First National Bank and Trust Company of Woodbury, New Jersey.
Prudential Insurance Co. v. Bloomfield Trust Co., 104 N.J. Eq. 372,
holds:
"A husband insured his life in favor of his wife, and later, under a power reserved to him in the policy, made it payable to a trustee without declaring the trust; held, that the designation of the wife as beneficiary was revoked and that the trustee held the fund upon a resulting trust for the estate of the insured."
At the final hearing, complainants urged that the trust agreement in question was hastily executed and that the trustor, at the time of the execution thereof, had signified his intention of providing for the ultimate disposal of the remainder over after the death of his mother and father, and this, it is contended by complainants, discloses an intent on the part of the trustor, that the next of kin of the mother and father were not to take, but that those who would have been trustor's next of kin at the expiration of the trust if trustor had lived, should take.
In Skellenger's Executors v. Skellenger's Executor, supra, a like contention was made and the court said:
"This argument * * * proceeds upon the assumption that the right of distribution is to be regulated by the intention of the testator. But this, I think, is a mistake. The intention of the testator is to govern only so far as he has declared it by his will. With regard to that part of his property which his will did not pass, it must be declared he had no will, and therefore the court cannot know his intention concerning it. The next of kin cannot take until intestacy is found, and then they take, not in pursuance of the testator's *Page 403 
intention, but by force of law, regardless of what his intentions were.
"If it were thought important to inquire into the intent of the deceased, when he has made a will, but left property undisposed of, either in terms or by implication, as every man is presumed to know the law, it may reasonably be inferred as his intention that the residue should be disposed of according to law."
The same reasoning applies to the trust agreement in question and the intention of the trustor is presumed to be that the remainder over undisposed of would pass in accordance with the law of distribution as it stood at the time of his decease, and in addition to this, the mere fact that he may have expressed an intention to subsequently dispose of the remainder over aforesaid does not in any way signify that he intended that the complainants should be the beneficiaries of the fund in any event. In fact, the trust agreement shows that he contemplated possible intestacy in that the fund was to be ultimately paid to his "executor or administrator."
Complainants are not entitled to be paid the fund in question, but the executor of the estate of Susanna J. Pedrick is entitled thereto and a decree dismissing the bill of complaint will be advised. *Page 404