76 N.J. Super. 256 (1962)
184 A.2d 163
FIDELITY UNION TRUST COMPANY, TRUSTEE, ETC., PLAINTIFF,
v.
BONNIE C. BYRNE, FORMERLY IMOGENE H. HAMPTON, ET AL., DEFENDANTS.
Superior Court of New Jersey, Chancery Division.
Decided September 13, 1962.
*257 Messrs. Lum, Biunno & Tompkins, attorneys for plaintiff (Richard Lum, appearing).
Mr. Leon Dreskin, attorney for Blanche Sweet Hackett.
Mr. Stuart A. Young, Jr., attorney for Raymond W. Hackett, Jr.
Messrs. Winne & Banta, attorneys for Manufacturers Hanover Trust Company, executor under the last will and testament of Imogene Hampton (Bonnie C. Byrne), (Mr. Peter G. Banta, appearing).
HERBERT, J.S.C.
The plaintiff, a trustee, asks for the approval of its final account and for directions concerning the distribution of the estate in its hands. None of the interested parties has questioned the account but they have sharp differences about the proper solution of the problems of distribution.
On June 11, 1923, in a suit for divorce brought by Imogene Hampton against Walter E. Hampton in the New Jersey Court of Chancery, an order was entered which provided that a substantial amount of alimony be paid to Imogene and directed the establishment of the trust fund which is *258 now ready for final distribution. The portion of the order which is pertinent for present purposes reads:
"It is FURTHER ORDERED and DECREED that the parties hereto, petitioner and defendant, join in a deed of conveyance to effect a sale of the Montclair property standing in the name of the petitioner, for a consideration which will realize at least the sum of Twenty-Seven Thousand Dollars ($27,000.00) over and above encumbrances thereon and that such moneys when realized be made and paid over to the Fidelity Union Trust Company, of the City of Newark, New Jersey, as trustee, to invest and reinvest the same and any increment thereon representing the original investment, and to divide the income therefrom as follows: Two-thirds to the petitioner and one-third thereof to the defendant, payable semiannually or oftener at the convenience of the said trustee; in case of the death of the defendant, the entire income therefrom shall be paid to the petitioner in her lifetime if she survive him, and in the event of the death of the petitioner, the entire income shall be paid to the defendant during his lifetime; and on the death of both petitioner and defendant, the principal and corpus of said fund shall be paid to the daughter of the parties hereto, if she shall have attained the age of thirty-five years, but if she shall not have attained that age, the income in the meantime shall be paid to her; in case said daughter shall die before coming into possession of said fund, then the same shall be disposed of as she shall in her last will and testament direct.
In case the petitioner and the said daughter of the parties hereto shall both predecease the defendant, then the entire corpus invested with the Fidelity Union Trust Co. as aforesaid, shall become the exclusive property of the defendant; in case however, the petitioner shall survive both the defendant and her daughter, then upon the decease of petitioner, the corpus of the said trust estate shall be disposed of in the manner directed in the last will and testament of the defendant."
Following the signing of the order of June 11, 1923 the trust fund was brought into existence by selling the Montclair property which stood in the name of Imogene Hampton and by turning over the proceeds of sale to the plaintiff as trustee. There was also a final decree of divorce which terminated the marriage of Imogene and Walter.
Walter E. Hampton died July 22, 1928. Myra Hampton Streger, his daughter and the only child of his marriage to Imogene, died July 19, 1945. Imogene H. Hampton, the former wife of Walter and the mother of Myra, died September *259 8, 1960. All three of them were residents of the State of New York at the time of death and all of them left wills which have been probated in that state. Myra Hampton was born in 1896. She was married three times; she became Mrs. Silver and then Mrs. Hackett and finally Mrs. Streger. Imogene H. Hampton also remarried after her divorce from Walter; she became Mrs. Byrne and in her will called herself "Bonnie Chase Byrne."
Myra, the daughter of Walter and Imogene, had only one child by all of her marriages, namely Raymond W. Hackett, Jr., who is sometimes called Raymond Hampton Hackett. He is alive and a party to this action. By her will Myra left her entire estate to the man who had been her second husband, Raymond W. Hackett. He survived her. Dying in 1950, he left a will giving his entire estate to Blanche Sweet Hackett.
On behalf of Blanche Sweet Hackett it is contended the will of Myra disposed of the trust corpus in favor of Raymond W. Hackett, who in turn left it to Blanche. More particularly, it is argued that the entire remainder interest in the trust fund was vested in Myra, was never divested, and, therefore, passed under her will.
Raymond Hackett, Jr. also claims the whole fund. His counsel argues that the entire ownership was not disposed of by, or in accordance with, the order of June 11, 1923 and hence reverted to the estate of Imogene, from which it should pass by intestacy to her only grandson.
The only other claimant is Manufacturers Hanover Trust Company, executor of Imogene. If its claim should be honored, it would take the trust fund and make distribution under the residuary clause of Imogene's will. The beneficiaries of that clause are the grandson, Raymond W. Hackett, Jr., and Imogene's three stepchildren, Robert H. Byrne, Rosalind Byrne Peay and Sylvia Byrne Gardner.
The order of the New Jersey Court of Chancery dated June 11, 1923 is the trust instrument. Although no proofs of the circumstances surrounding the drafting of the order *260 were offered  and after nearly 40 years the absence of such an offer is hardly surprising  it may be presumed the order resulted from negotiations between husband and wife and their respective counsel; in short that it represents a settlement. It speaks, however, as a judgment of the court. In any event, no argument is made for any party to the present proceeding that peculiar problems are presented because of the nature of the writing to be interpreted, and all counsel have approached the case as though the trust instrument had been a conventional inter vivos trust agreement or a will.
That approach appears to be in accord with accepted standards for the interpretation of judgments. 30A Am. Jur., Judgments, § 69, p. 212; 49 C.J.S. Judgments § 436, p. 863.
There are indications that the order should be regarded as having given to Myra a vested remainder. The law's policy requires that interests should be held to be vested rather than contingent unless such result is clearly inconsistent with the intention of the creator. In re Buzby, 94 N.J. Eq. 151 (E. & A. 1922). No words of contingency were used in the order when introducing the subject of Myra's interest in the fund. To the contrary, her interest is first mentioned in words which describe events certain to occur in the future: "and on the death of both Petitioner and Defendant, the principal and corpus of said fund shall be paid to the daughter of the parties hereto." There follows, as quoted earlier, a provision permitting Myra to enjoy only income until her thirty-fifth birthday. Yet the reason for delaying her full enjoyment of the whole fund until after the deaths of both parents was to permit the respective life estates of the parents to come into being and run their courses, thus bringing the case within the rule of vesting stated in Cody v. Fitzgerald, 2 N.J. 93, 97 (1949), and the authorities there cited.
As for the argument that if Myra was intended to have a vested remainder, no need existed for including the language giving her express authority to dispose of the trust *261 fund by her will, I find it unimpressive and prefer the view that the author or authors of the clause in question mentioned Myra's will, not for the purpose of converting into a contingency what would otherwise have been a vested remainder, but rather that they added, merely as a precaution, more words than were strictly necessary to define her power of testamentary disposition if she should outlive her parents but die before her thirty-fifth birthday.
The case cannot be decided, however, by taking the view that Myra acquired a vested remainder the moment the trust was established. Was her interest, whether vested or contingent, subject to divestiture? And has it been divested? The answer to the first of those questions is furnished by the language of the second paragraph of the portion of the order quoted early in this opinion. The interest of Myra was made subject to divestiture: It was expressly provided that if both Myra and Imogene should die before Walter, Sr., he would become the sole owner of the trust principal, thus divesting Myra of any interest in the trust. However, Walter, Sr., was not the last survivor; Imogene was. That sequence brings into question the following language from the order:
"* * * in case, however, the petitioner [Imogene] shall survive both the defendant [Walter, Sr.] and her daughter [Myra], then upon the decease of petitioner, the corpus of said trust estate shall be disposed of in the manner directed in the last will and testament of the defendant."
Walter, Sr., who died before his daughter and before Imogene, made no reference in his will to the order, to the trust established under the order, or to any power of appointment given to him by the order. No sensible argument can be made that he had a vested remainder in the trust which would pass by the residuary clause of his will. He had, at best, a power of appointment over the corpus, to be exercised in accordance with the requirements of New Jersey law. Farnum v. Pennsylvania Co., Inc., 87 N.J. Eq. 108 *262 (Ch. 1916). His will indicates that he was a man of some means, and its residuary clause created a trust for his daughter Myra for life, remainder to her offspring. The mere insertion of a residuary clause in Walter's will did not constitute the exercise of his power of appointment. Bank of New York v. Black, 26 N.J. 276 (1958).
The failure of Walter Hampton, Sr. to exercise his power of appointment is the cornerstone of an argument made by Blanche Sweet Hackett's counsel that Myra's interest was not divested at the moment Imogene became the last survivor of the three persons named in the order, because any divestiture depended upon a combination of two things: (a) Imogene's survivorship, and (b) the exercise by Walter, Sr., of his power of appointment. I am unable to accept this argument. In my view, the death of Myra, occurring before death of either or both of her parents, was the significant event of divestiture fixed by the order of June 11, 1923. When Myra died before her mother (her father being already dead), whatever interest she then had in the trust was terminated. There was nothing left to pass by her will. That Walter, Sr. had failed to exercise his power of appointment, and that no gift over had been included in the order, are omissions of no importance to those claiming through Myra.
Though each case in this general field is apt to be, in some respects at least, unlike each other case, the conclusion that Myra's death while her mother lived divested entirely such interest as Myra had in the fund while alive is, I believe, consistent with and supported by Fidelity Union Trust Co. v. Potter, 8 N.J. Super. 533 (Ch. Div. 1950); In re Bostwick's Will, 236 N.Y. 242, 243, 140 N.E. 576 (Ct. App. 1923); and In re Bondy's Estate, 57 N.Y.S.2d 408 (Surr. Ct. 1945).
There having been no provision in the order of June 11, 1923 for a gift over if Walter, Sr., should have the opportunity to exercise his power of appointment and should fail to do so, there was to that extent an incomplete property *263 disposition when the trust was created, and hence a reversionary interest in Imogene, she having been, in effect, the settlor by reason of having owned the property used to create the trust. The trust, of course, terminated at Imogene's death, and her reversionary interest having taken effect, the corpus became subject to disposition under the terms of her will. It should be paid to her executor for that purpose. Wright v. Renehan, 10 N.J. Super. 363, 372 (Ch. Div. 1950).