93 N.J. Super. 293 (1967)
225 A.2d 710
IN THE MATTER OF THE TRUST UNDER AGREEMENT OF ELEANOR S. VOORHEES, DECEASED.
PLAINFIELD TRUST STATE NATIONAL BANK, ETC., ET AL., PLAINTIFFS-RESPONDENTS,
v.
HELEN VOORHEES MEDING, DEFENDANT-APPELLANT, AND
ANDREW V. GUARRIELLO, ADMINISTRATOR, ETC., ET AL., DEFENDANTS-RESPONDENTS.
Superior Court of New Jersey, Appellate Division.
Argued November 14, 1966.
Decided January 5, 1967.
*295 Before Judges GAULKIN, LEWIS and LABRECQUE.
Mr. Harrison F. Durand argued the cause for appellant Helen Voorhees Meding (Messrs. Durand, Twombly & Imbriaco, attorneys; Mr. Joseph F. Imbriaco, of counsel).
Mr. Robert P. Hazlehurst, Jr. argued the cause for respondents Edward Holloway and Edward Holloway, Jr., two of the executors and trustees under the will of Dr. Irving Wilson Voorhees (Messrs. Pitney, Hardin & Kipp, attorneys; Mr. Gordon A. Millspaugh, Jr., of counsel).
*296 No briefs or appearances for respondents Plainfield Trust State National Bank and Edward LeRoy Voorhees, trustees, or for respondent Andrew V. Guarriello, administrator ad litem for estate of Irving Wilson Voorhees, Jr.
The opinion of the court was delivered by LEWIS, J.A.D.
The Plainfield Trust State National Bank and Edward LeRoy Voorhees, as trustees of an inter vivos trust created by Eleanor S. Voorhees (herein settlor), sought the advice of the Union County Court, Probate Division, as to the distribution of the corpus of the trust upon the death of the last life beneficiary. The court ruled that a partial lapse had occurred and, by a resulting trust, one-half of the corpus should revert to the settlor's estate to be distributed in accordance with the provisions of the residuary clause of her will. That determination is here on appeal.
The essential facts were undisputed, and the matter was submitted to the trial court on a stipulated record and the arguments of counsel. In sum, the trust created by settlor on April 16, 1940 provides: (1) income to be paid to settlor for life; (2) upon her death income to be paid to her brother, Dr. Irving Wilson Voorhees, for his life, with a right to invade principal for his benefit in stated circumstances, (3) upon the death of Dr. Voorhees to pay one-half of the principal of the trust to the children of settlor's deceased brother, Stephen H. Voorhees, in equal shares per stirpes, and
"To continue to hold the remaining one-half share of said trust fund and to pay the net income therefrom in quarterly payments as nearly as may be to Irving Wilson Voorhees, Jr., son of Dr. Irving Wilson Voorhees, until he arrives at the age of forty (40) years, and upon his arriving at said age, to transfer, turn over and pay to him the principal of said share of said trust fund, the same to be his absolutely.
[Next follows a provision for a limited right to invade principal.]
In the event of the death of said Irving Wilson Voorhees, Jr., before reaching the age of forty (40) years, then to transfer, turn over and pay the corpus of the trust fund held for his benefit, to his issue, share and share alike if more than one, to be his, hers or theirs absolutely."
*297 Concurrent with the signing of the aforesaid trust instrument the settlor executed a will by which she devised and bequeathed her entire residuary estate to her brother, Dr. Voorhees. Nine days thereafter settlor died. She was survived by Dr. Voorhees, his son Irving (hereafter Irving, Jr.), and the two daughters, Mrs. Ruth S. Voorhees and Mrs. Helen V. Meding, of her deceased brother Stephen.
Prior to attaining 40 years of age, Irving, Jr. was killed in action during World War II; he was unmarried, left no issue, and had not made a will. Dr. Voorhees died February 4, 1965; he left a will wherein he established testamentary trusts providing for life beneficiaries, including his nieces Ruth S. Voorhees and Helen V. Meding, with a provision for the principal of his trust estates to be ultimately paid in equal shares to the Manhattan Eye, Ear and Throat Hospital and Princeton University.
The death of Dr. Voorhees terminated his sister's inter vivos trust and precipitated the pending action of the trustees for judicial instructions. It is conceded that the nieces, Ruth and Helen, each are entitled to a one-quarter interest in the trust corpus; the instant controversy centers upon the remaining portion of the trust assets designated by the donor to be given to Irving, Jr. or his issue.
The trial court held that the share of the trust corpus intended for Irving, Jr. reverted, by virtue of a resulting trust occasioned by a failure of the gift-over, to settlor's estate. Accordingly, judgment was entered determining that the one-half part of the remainder of the trust passed to Dr. Voorhees pursuant to the residuary clause of settlor's will and was now distributable to the executors of his estate.
The appeal from that judgment is prosecuted by Helen V. Meding. She urges this court to construe the trust agreement in a manner which she claims would avoid a partial lapse and carry out settlor's alleged probable intent, to wit, that her nieces should receive the entire corpus. She also asserts that the trust agreement should be construed as a residuary gift to a class with the incidental right of survivorship. We find those *298 arguments to be unsupported by the factual record and the applicable law.
When property is transferred upon a trust which subsequently fails in part, a resulting trust arises as to the interest with respect to which the trust fails and the corpus reverts to the settlor. Restatement, Trusts 2d § 411, and comments (h) and (k) (1959); 4 Scott, Trusts (2d ed. 1956), § 411, p. 2935. As Vice-Chancellor Sooy observed in Pedrick v. Guarantee Trust Co., 123 N.J. Eq. 395 (Ch. 1938):
"* * * in case an express trust does fail, in whole or in part, for any reason, the equitable interest automatically returns to the settlor and his successors in interest and the beneficial interest is considered as never having left the settlor. 2 Bogert on Trusts, vol. 2, § 468; 1 Perry on Trusts, vol. 1 § 152." (at p. 400)
See also the ordered disposition of corpus in Fidelity Union Trust Co. v. Byrne, 76 N.J. Super. 256 (Ch. Div. 1962), and Wright v. Renehan, 10 N.J. Super. 363 (Ch. Div. 1950).
When a lapse occurs the presumption is that a resulting trust should be imposed, "But where it is shown by evidence which is properly admissible that the settlor intended that a resulting trust should not arise, it does not arise. In such a case the ordinary inference which gives rise to a resulting trust is rebutted." 4 Scott, op. cit., § 412, p. 2947. Accord, Restatement, Trusts 2d, § 412.
In ascertaining the intention of settlor the "primary inquiry" must be directed to "the language of the instrument itself." In re Trust Co. of Morris County, 83 N.J. Super. 411, 416 (App. Div. 1964); In re Central Home Trust Co., 61 N.J. Super. 109, 115 (Ch. Div. 1960); Fidelity Union Trust Co. v. Heller, 18 N.J. Super. 49, 54 (App. Div. 1952). In so doing, we seek "to ascertain and give effect to the probable intention of the settlor." In re Trust Co. of Morris County, supra. When the instrument itself fails to indicate intent, "resort may be had to extrinsic evidence to determine the terms of the trust." 2 Scott, op. cit., § 164.1, pp. 1156-1157.
*299 The trust agreement here under consideration does not indicate of itself any intent to avoid the reversion. Nor is there any extrinsic evidence of a nature similar to that relied on in In re Cook, 44 N.J. 1, 4-5, 9 (1965). In the strict sense, this trust does not present the court with any issue as to ambiguity. There is no problem or doubt as to the meaning of the words of the document. Rather, we have an omission to provide for a contingency. Prior to In re Burke, 48 N.J. 50 (1966), our courts consistently followed the rule that the search for probable intent need go beyond the words of the instrument only if its terms were ambiguous and doubtful.[1] If the language was clear, and no ambiguity was asserted, the court would confine itself to giving effect to the language used. See e.g., Clark v. Judge, 84 N.J. Super. 35, 55 (Ch. Div. 1964), affirmed o.b. 44 N.J. 550 (1965), and In re Central Home Trust Co., supra.
In Burke our Supreme Court construed a will that involved a "complete gap," for it made "no provision whatever" for the contingency which transpired. Appellant urges, in a letter supplementing her brief, that the recent Burke opinion "powerfully supports" her contentions as to settlor's probable intent. We do not agree. There the critical issue was whether the remainder interest of a testamentary trust should pour over into two other residuary trusts or be disposed of as intestate property. The doctrine of probable intent was applied to avoid an intestacy.
The current view of probable intent requires that a trust or will be construed in a manner consonant with what the donor would have done had she envisioned the unexpected problem. This entails viewing the document as a whole in order to see if it evinces a "dominant plan and purpose" when *300 read in the light of the surrounding circumstances, ascribing to the settlor those impulses "common to human nature" and considering the competent extrinsic evidence as to the settlor's intent. In re Burke, supra, at pp. 63-64; In re Cook, supra, at p. 6; Fidelity Union Trust Co. v. Robert, 36 N.J. 561, 564-566 (1962); In re Conway, 92 N.J. Super. 428, 434 (App. Div. 1966). But, as stated in Burke, a court "may not, of course, conjure up an interpretation or derive a missing testamentary [trust] provision out of the whole cloth * * *." 48 N.J., at p. 64.
Indeed, the precedential value of Burke in the matter sub judice is further limited by two other principles: (1) precedent is of "no great force" when a court seeks the probable intent of a donor in a particular situation; (48 N.J., at pp. 63-64. Accord, In re Morton, 48 N.J. 42, 47 (1966); Fidelity Union Trust Co. v. Robert, supra, at p. 568), and (2) the decision was to a large measure compelled by the law's strong preference for testate rather than intestate succession, and the acceptability of "almost any construction to escape" intestacy. 48 N.J., at p. 65; Fidelity Union Trust Co. v. Robert, supra, at p. 572.
This court is not faced with the spectre of intestacy; the disputed one-half of trust corpus would be completely disposed of under the terms of Dr. Voorhees' will. Viewing the current problem as we are obliged to do when it is necessary to effectuate probable intent in order to avoid intestacy, the result reached by the Probate Division is a rational and logical conclusion as to what settlor would have done had she considered the contingency that transpired. Moreover, raising a resulting trust in favor of the settlor's late brother and disposing of the property in the manner provided for under his will would be consistent with common human impulses, the dominant purpose of the trust and will when read together, and the evidentiary circumstances surrounding the execution of the instruments. It is not unreasonable to assume that, had the settlor expected the death of Irving, Jr. in his father's *301 lifetime, she would have wanted the father to take the son's half of the corpus upon the latter's death.
There is no factual basis for determining that the settlor had any intention of leaving the residue of the entire trust to her surviving blood relatives as a class. She had two brothers and she divided the remainder of her trust estate into two equal parts for the ultimate benefit of their respective issue. Although she failed in the trust agreement to provide specifically for what may well have seemed a remote possibility, i.e., the premature death of her nephew without issue, she did, however, by a simultaneously executed will provide for all unforeseen contingencies and specifically for an avoidance of an intestate distribution of her estate. As the trial judge noted:
"* * * The picture is of a concordant family relationship and a natural disposition of the decedent's estate equally to the issue of her two brothers, and upon the failure of any part of that disposition, then to her surviving brother. Beyond the two brothers and their issue, she took no heed."
In view of the natural, complete and unambiguous disposition envisioned by the complementary provisions of settlor's inter vivos trust instrument and her will, we hold that the documents themselves indicate a clear probable intent that the distribution of corpus be as ordered by the Probate Division. The judgment appealed from is
Affirmed.
NOTES
[1] It should be noted that the "general principles governing the interpretation of a trust instrument are the same as those which govern the interpretation of instruments under which property is disposed of absolutely whether by instrument inter vivos or by will." 2 Scott, op. cit., § 164.1, p. 1160. Accord, In re Trust Co. of Morris County, supra, 83 N.J. Super., at p. 417.