**ESTATE of Thomas W. STREETER, Deceased, et al., Appellants,**

v.

**COMMISSIONER OF INTERNAL REVENUE, Appellee.**

**No. 72–1500.**

United States Court of Appeals, Third Circuit.

Argued March 5, 1973.

Reargued Nov. 16, 1973.

Decided Jan. 11, 1974.

Morris B. Abram, James B. Lewis, Michael A. Varet, New York City, for appellants; Paul, Weiss, Rifkind, Wharton & Garrison, New York City, of counsel.

Scott P. Crampton, Asst. Atty. Gen., Meyer Rothwacks, Paul M. Ginsburg, Charles R. Burnett, Tax Div. Dept. of Justice, Washington, D.C., for appellee.

Argued March 5, 1973

Before GIBBONS and HUNTER, Circuit Judges, and MUIR, District Judge.

Reargued en banc Nov. 16, 1973

Before SEITZ, Chief Judge, and VAN DUSEN, ALDISERT, ADAMS, GIBBONS, ROSENN, HUNTER, WEIS and GARTH, Circuit Judges.

## OPINION OF THE COURT

GIBBONS, Circuit Judge.

This is an appeal by taxpayers from a decision of the United States Tax Court holding that they were not entitled to deduct as administration expenses on an estate tax return auctioneers commissions of $490,292.89 paid by the decedent's testamentary trustees to Parke-Bernet Galleries, Inc. in connection with the sale of decedent's "Americana Collection." The tax court's findings of fact and opinion are in T.C. Memo 1971–260. We affirm.

The decedent, a lawyer and a New Jersey resident, died testate on June 12, 1965. His will, admitted to probate in Morris County, New Jersey, named the same persons as executors and testamentary trustees. The named fiduciaries qualified in both capacities, obtaining letters testamentary and letters of trusteeship from the Surrogate of Morris County on June 25, 1965. One of the principal assets of the estate was the decedent's "Americana Collection" of some 4800 books, maps and other historical manuscripts and objects. By Article TWENTY-FIRST of the will decedent bequeathed the "Americana Collection" " . . . to my trustees hereinafter named in Article TWENTY-SIXTH of this my Last Will and Testament, IN TRUST, NEVERTHELESS, for . . . [certain] purposes set forth in that article." Paragraph 1 of ARTICLE TWENTY-FIRST provided:

"1. I direct my trustees to dispose of . . . [my Americana Collection] by sale, leaving it to the sole discretion of my trustees whether the sale or sales shall be of all or part or parts thereof and whether the sale or sales shall be entirely or partially at

public auction or entirely or partially at private sale. The time of sale or sales of my 'Americana Collection' and the terms of the sale or sales shall be within the sole discretion of my trustees, who shall have no personal liability for the extension of any credit or credits in connection with such sale or sales which may prove unwise or for any other errors in judgment."

In paragraphs 2 and 3 of the same article the decedent directed the trustees to pay cash in the amount of $174,000 to named institutions out of the proceeds of sale of the "Americana Collection". In paragraph 4 decedent directed that if the net proceeds of sale of the "Americana Collection" should exceed $174,000 the first $240,000 of such excess should be paid by the trustees to certain of the named institutions in designated proportions. Paragraph 5 of Article TWENTY-FIRST provided:

"5. In directing that my 'Americana Collection' be sold, I have in mind that some items in the collection have a low market value and that it would be inadvisable to include such items in a public sale. Accordingly, I authorize my trustees to dispose of by gift to any public or institutional library parts of the 'Americana Collection' not in the aggregate exceeding Ten Thousand Dollars ($10,000) in appraised value."

In paragraph 6 of the same article the decedent authorized the trustees to retain four prominent bibliophiles as consultants in the disposition of his book collection and to pay each an honorarium. Paragraph 7 of Article TWENTY-FIRST provided:

"7. It is my wish that the sale of my 'Americana Collection' shall be completed within twenty-one (21) years from the date of my death and I direct that the proceeds from the sale of said 'Americana Collection' be applied by my trustees in the following order:

"(a) To the payment of all expenses and charges incident to carrying out the trust, including the honorarian to be paid to each of the consultants hereinbefore named.

"(b) To the payment of the bequests to the institutions named in Article TWENTY-FIRST, paragraphs 2 and 3 thereof.

"(c) To the payment of the balance of said proceeds, if any, when and as received, in equal shares to my children then living at the time of such receipt, and the issue then living of any deceased child or children of mine, such issue of any deceased child to receive *per stirpes* the share that such child would have received if then living."

Decedent was survived by his wife, one of those named executrix and trustee, and four children. The disposition in Article TWENTY-FIRST, paragraph 7 (c) was the same as the disposition made in Article TWENTY-SECOND of the decedent's residuary estate. On or about March 4, 1966 the executors transferred to the trustees the "Americana Collection". On May 25, 1966 the trustees made an agreement with Parke-Bernet Galleries, Inc. pursuant to which Parke-Bernet would act for them in the sale of the "Collection". A series of seven public auctions were conducted at six-month intervals beginning in October 1966 and ending in October 1969. In these sales the trustees realized gross proceeds of $3,101,902.00, incurred Parke-Bernet commissions of $490,292.89, and received net proceeds of $2,611,609.11. On their U.S. Fiduciary Income Tax Returns for the years 1966 through 1969 the trustees reported the net proceeds received in each year [1] from Parke-Bernet. The executors, in the estate-tax return, treated the $490,292.89 of commissions paid to Parke-Bernet as expenses of the estate, deducting that amount from gross estate. In calculating a deficiency in estate tax the Commissioner determined

---

1. With a minor exception not relevant for present purposes. (Tax Court Stipulation of Facts, paragraph 25)

**378**

that the Parke-Bernet commissions were expenses of the trust and disallowed the deduction on the estate tax return. The Tax Court sustained the Commissioner. This appeal followed. It presents the sole issue whether the $490,292.89 was a' proper estate tax deduction.

If the executors had been empowered by the will to sell assets to effect distribution auctioneer fees, ·stipulated to be reasonable, would have been deductible. Treas.Reg. § 20.2053–3(d)(2). Taxpayers contend that the sale in this case was the functional equivalent of a sale by executors in order to effect distribution, and should be treated equivalently. This result is precluded by the governing statute and regulations. The Internal Revenue Code of 1954 in § 2053 provides in part:

> "(a) General Rule.—For purposes of the tax imposed by § 2001, the value of the taxable estate shall be determined by deducting from the value of the gross estate such amounts—
>
> . . . (2) for administration expenses . . . as are allowable by the laws of the jurisdiction . . . under which the estate is being administered."

The regulations under this section of the Code in § 20.2053–3 provide in part:

> "(a) In general. The amounts deductible from a decedent's gross estate as 'administration expenses' . . . are limited to such expenses as are actually and necessarily incurred in the administration of decedent's estate; that is, in the collection of assets, payment of debts, and distribution of property to the persons entitled to it. The expenses contemplated in the law are such only as attend the settlement of an estate and the transfer of the property of the estate to individual beneficiaries or to a trustee. Expenses not essential to the proper settlement of the estate, but incurred for the individual benefit of the heirs, legatees or devisees, may not be taken as deductions . . . ."

If the trustees were legatees, who incurred auctioneers' commissions for their own benefit, the expense is a trust expense and not an estate tax deduction.

 The decedent did create a trust. He gave his trustees discretion to perform their duties over twenty-one years. No such period is ordinarily afforded for the administration of an estate. There are differences between the post of executor and that of testamentary trustee, in obligation, in accountability, and in duties. 1 A. Scott, Trusts § 6 (3d ed. 1967); Restatement (Second) of Trusts § 6 (1959). *See* In re Rogers' Estate, 13 N.J. 508, 512, 100 A. 2d 527, 530 (1953), which states that it is:

> "firmly established that a fiduciary must act in one or the other of his fiduciary capacities, and 'cannot, in his administration of any part of the property committed to him, be said to act in a duplex character' . . . . Each act generally must be performed either in the capacity of executor (or administrator) or in the capacity of trustee, and the reasons for this placement of duty and responsibility, which are legion, are apparent in suits premised on alleged fiduciary · neglect."

The executors had neither duty nor power to sell the "Americana Collection". They turned it over intact to trustees who had that duty and power, and who, judging from the results, performed well. That the executors might have done as well is beside the point. The trustees were legatees. The validity of the trust would undoubtedly be recognized in New Jersey had it been contested. *See, e. g.,* In re Voorhees, 93 N.J. Super. 293, 298, 225 A.2d 710, 713 (1967); In re Steelman's Estate, 87 N. J.Eq. 270, 273–274, 99 A. 612, 614 (1917). It seems clear that the auctioneer's fees would, under New Jersey law, be expenses of the trust, not of the estate. This being so they do not qualify for deduction under § 2053. *See* Treas. Reg. § 20.2053.1.

 Taxpayers, relying principally on authorities dealing with inclusion of corpus of inter vivos trusts in a decedent's estate for estate tax purposes,

contend that we should not read § 2053(a) of the Code and § 20.2053–3(a) of the Regulations to mean what they obviously say. Section 2053(b) deals with the expenses of such nontestamentary trusts, providing:

" . . . [T]here shall be deducted in determining the taxable estate amounts representing expenses incurred in administering property not subject to claims which is included in the gross estate to the same extent such amounts would be allowable as a deduction under subsection (a) if such property were subject to claims, and such amounts are paid before the expiration of the period of limitation for assessment provided in section 6501."

The regulations issued under § 2053(b) make it clear that the property referred to in that section is not property passing through the estate and then to a testamentary trust, but property not passing through the estate at all. The regulations recognize estate tax deductions in two categories. The first category includes amounts payable out of property subject to claims which are allowable by the law of the probate jurisdiction. Treas.Reg. § 20.2053–1(a)(1). The second category includes amounts representing expenses incurred in administering property which is included in the gross estate but is not subject to claims. Treas.Reg. § 20.2053–1(a)(2). The regulations go on to provide which expenses may be deducted in the first category.

### § 20.2053–3 Deduction for expenses of administering estate

"(a) In general. The amounts deductible from a decedent's gross estate as 'administration expenses' of the first category (see paragraphs (a) and (c) of § 20.2053–1) are limited to such expenses as are actually and necessarily incurred in the administration of the decedent's estate; that is, in the collection of assets, payment of debts, and distribution of property to the persons entitled to it. The expenses contemplated in the law are such only as attend the settlement of an estate and the transfer of the property of the estate to individual beneficiaries or to a trustee, whether the trustee is the executor or some other person. Expenditures not essential to the proper settlement of the estate, but incurred for the individual benefit of the heirs, legatees, or devisees, may not be taken as deductions."

The regulations also make clear which expenses may be deducted in the second category:

### § 20.2053–8 Deduction for expenses in administering property not subject to claims

"(a) Expenses incurred in administering property included in a decedent's gross estate but not subject to claims fall within the second category of deductions set forth in § 20.2053–1, and may be allowed as deductions if they—

(1) Would be allowed as deductions in the first category if the property being administered were subject to claims; and

(2) Were paid before the expiration of the period of limitation for assessment provided in section 6501.

Usually, these expenses are incurred in connection with the administration of a trust established by a decedent during his lifetime. They may also be incurred in connection with the collection of other assets or the transfer or clearance of title to other property included in a decedent's gross estate for estate tax purposes but not included in his probate estate."

Since the trust estate which incurred the expenses here passed through the decedent's estate and was subject to claims, its expenses are neither first category nor second category expenses of administration, but rather expenses of a legatee. The taxpayers urge that their functional approach is adopted in Treas. Reg. § 20.2053–3(b)(3) which provides:

"(3) Except to the extent that a trustee is in fact performing services with respect to property subject to claims which would normally be per-

formed by an executor, amounts paid as trustees' commissions do not constitute expenses of administration under the first category, and are only deductible as expenses of the second category to the extent provided in § 20.-2053–8.''

This provision does impose a functional limitation on the amount of deduction allowable in the second category, but it does not enlarge the category beyond that contemplated by § 2053(b) of the Code; that is, the category of inter vivos transfers subject to taxation in an estate by operation of the tax law, but not a part of the probate estate.

The 1954 Code and Regulations, so read, are entirely consistent with pre-1954 case law. Prior to 1954, when a decedent made an inter vivos transfer in trust and the corpus of the trust was subject to claims on the decedent's estate and includable therein for estate tax purposes, the courts recognized the deductibility of trustee expenses similar to those which would have been incurred by the executor had he performed the same services. See Commissioner v. Bronson, 32 F.2d 112 (8th Cir. 1929). When a decedent made an inter vivos transfer in trust which was not subject to claims but was included in the decedent's estate for estate tax purposes, the courts recognized that only the net value of the inter vivos trust was includable, recognizing that expenses and commissions were incurred by the trust estate. See Haggart's Estate v. Commisioner, 182 F.2d 514 (3d Cir. 1950); Commissioner v. Davis, 132 F.2d 644 (1st Cir. 1943). But where the trust property involved was essentially a testamentary disposition, the courts recognized that distribution by the executor completed administration of the probate estate for purposes of the estate tax administrative expense deduction. Estate of James P. Smith, 6 B.T.A. 911, 913 (1927). Cf. Sharpe's Estate v. Commissioner, 148 F.2d 179 (3d Cir. 1945); 4 Mertons, Law of Federal Estate and Gift Taxation § 20.34, n.74 (1959). Congress when it adopted § 2053 of the 1954 Code did not intend a change in the existing law. See S.Rep.No.1622, 83d Cong., 2d Sess. 474 (1954) (reprinted in 3 U.S.Code Cong. and Admin.News 5117 (1954)); H.R. Rep.No.1337, 83d Cong., 2d Sess. A318 (1954) (reprinted in 3 U.S.Code Cong. and Admin.News 4460 (1954)).

That by choosing a testamentary trust rather than directing a sale by his executors the decedent has lost a large estate tax deduction which might otherwise be available may seem a harsh result. But we cannot redraft the instrument chosen by the decedent. The decision of the Tax Court will be affirmed.