262 N.J. Super. 456 (1992)
621 A.2d 94
IN THE MATTER OF MARIBEL GONZALEZ, DECEASED.
Superior Court of New Jersey, Chancery Division Cumberland County, Probate Part.
Decided December 1, 1992.
*457 Louis P. McFadden, Jr., for petitioner.
Stephen D. Barse, for respondent (Gruccio, Pepper, Giovinazzi, DeSanto & Farnoly, attorneys).
KLEINER, J.S.C.
The very common factual background of this contested motion surprisingly has not been addressed in any prior reported New Jersey opinion. The application before this court has been initiated by Israel Gonzalez, Co-Trustee, albeit without judicial appointment, of the "Maribel Gonzalez Fund" presently on deposit in the New Jersey National Bank (hereafter Respondent), which is the Co-Trustee, albeit, also, without judicial appointment, of the same fund. Israel Gonzalez (hereafter Petitioner) seeks the entry of an order declaring that the *458 balance on deposit be paid to him as the widower of Maribel Gonzalez, deceased.
In 1987, Maribel Gonzalez, was diagnosed as suffering from acute leukemia. After chemotherapy proved unsuccessful in treating this malady, her physicians recommended a bone marrow transplant. Although Maribel was a named insured under her husband's medical insurance provided to the Gonzalez family through his employment, the insurer denied coverage on the basis that a bone marrow transplant was experimental surgery.
The Gonzalez family, with the assistance of the NAACP, undertook fund raising efforts seeking private donors to defray the anticipated medical expenses of the proposed transplant. The campaign included advertisements in newspapers circulated in the Vineland, New Jersey geographical area, where the Gonzalez family resided. Donors were requested to mail contributions to the "Maribel Gonzalez Fund" in care of the New Jersey National Bank. Upon receipt, these funds were deposited in an account bearing the designation, "Maribel Gonzalez Fund," Israel Gonzalez and New Jersey National Bank, Co-Trustees. Ultimately $21,000 was collected and deposited. These funds were partially expended for medical expenses incurred by the intended beneficiary. Unfortunately, on April 14, 1989, prior to the anticipated bone marrow transplant, Maribel Gonzalez died from leukemia. The existing balance of the fund was $7,700. Since her death, this fund has remained on deposit and has yielded interest. The only withdrawal has been a yearly checking account service fee paid to the bank.
Faced with some personal financial needs, Israel Gonzalez sought to withdraw the existing balance. The bank refused to permit this withdrawal and the litigation ensued.
The novel question presented is what disposition is to be made of the surplus monies of a fund created by public donation when the purpose for the fund cannot be accomplished.
Although the fund was not created by a formal trust agreement or by a testamentary bequest pursuant to an instrument *459 admitted to probate, all of the elements of a valid trust are nonetheless present: (1) settlor; (2) res; (3) beneficiary; (4) trustee; (5) specific fiduciary duty between trustee and beneficiary. Parties engaging in conduct indicative of a purpose to create a trust relationship will invite the application of the law of trusts to their transaction, notwithstanding the lack of an express declaration of a trust. Trenton Times Corp. v. United States, 361 F. Supp. 222, 226 (D.C.N.J. 1973).
Predicated upon this concept both parties argue that the doctrine of cy pres should be utilized to determine the disposition of the unconsumed portion of the fund. Petitioner contends the cy pres doctrine permits the distribution of corpus to the Gonzalez family. Respondent contends the cy pres doctrine compels the distribution of the corpus to the National Leukemia Foundation. For the reasons expressed, this court finds that the cy pres doctrine is not the appropriate mechanism to resolve the question posed. "The doctrine of cy pres is a judicial mechanism for the preservation of a charitable trust when accomplishment of the particular purpose of the trust becomes impossible, impracticable, or illegal." Howard Savings Inst. v. Peep, 34 N.J. 494, 500, 170 A.2d 39 (1961). The doctrine may only be applied to a charitable trust. Sharpless v. Religious Soc., 228 N.J. Super. 68, 548 A.2d 1157 (App.Div. 1988); Howard, supra at 500, 170 A.2d 39.
In analyzing the elements of a charitable trust, 4A William F. Fratcher, Scott on Trusts, § 375, (4th Ed. 1989), provides:
A trust will not be upheld as charitable unless the accomplishment of the trust is of benefit or supposed benefit to the community. A trust may fail because the class of persons who are to benefit is so narrow that the community has no interest in the performance of the trust. It is a question of degree whether the class is large enough to make the performance of the trust of sufficient benefit to the community so that it will be held as a charitable trust. If the purpose of the trust is to relieve poverty, promote education, advance religion, or protect health, the class need not be as broad as it must be where the benefits to be conferred have no relation to any of these purposes. On the other hand, the class of persons to be benefitted may be so limited that the *460 trust is to relieve their poverty to educate them, to save their souls or to promote their health.[1]
Additionally, the Restatement of Trusts, (Second) § 1, comment c (1959) provides:
The fundamental distinction between private trusts and charitable trusts is that, in the case of a private trust, property is devoted to the use of specified persons who are designated as beneficiaries of the trust; whereas in the case of charitable trust, property is devoted to purposes beneficial to the community.
It is clear that the donors in the case sub judice forwarded contributions to the "Maribel Gonzalez Fund" to be used solely for the benefit of Maribel Gonzalez. The Fund is then a private and not a charitable trust. See also Tripp v. Commissioner, 337 F.2d 432 (7th Cir.1964) (payments to college scholarship fund for the educational expenses of one individual deemed not to be for charitable purposes); United States v. Bank of America National Trust & Sav. Ass'n., 326 F.2d 51 (9th Cir.1963) (establishment of trust for purposes of providing free hospital beds for designated persons deemed not to be charitable).
Having concluded that the "Maribel Gonzalez Fund" is a private, not charitable trust, the court must now determine, in the absence of the cy pres doctrine, what rule of law will direct the disposition of the surplus monies, and to whom. New Jersey has adopted the Restatement approach with regard to issues pertaining to the distribution of trust funds. "When property is transferred upon a trust which subsequently fails in part, a resulting trust arises as to the interest with respect to which the trust fails and the corpus reverts to the settlor." In re Voorhees, 93 N.J. Super. 293, 298, 225 A.2d 710 (App.Div. 1967). This general rule requiring imposition of a resulting trust on the surplus held by the trustee in favor of the settlors is applicable where "the intended beneficiary is incapable of taking the beneficial interest ..." Id. Because Maribel Gonzalez is deceased, the purpose of the trust, as originally created, has failed.
*461 A resulting trust, however, will not arise, "if the transferor properly manifested an intention that no resulting trust should arise upon the failure of the trust." Restatement of Trusts, Second § 412 comment h, (1959).
While this motion was pending, Petitioner supplemented his motion for summary judgment with certifications of many individuals who attest they were contributors in 1987 to the "Maribel Gonzalez Fund." Each certification states that had the contributor known that Maribel Gonzalez would die prior to the intended bone marrow transplant, the contributor would have desired that the surplus funds be distributed to her surviving family.
To investigate the manifestation of intention of the transferor, the court is permitted to accept parol evidence of donative intent in determining whether a resulting trust should be created from the trust res. Restatement of Trusts (Second) § 412, Id.
This court finds Babcock v. Fish, 327 Mich. 72, 41 N.W.2d 479, (1950) helpful in this analysis. In Babcock, a young girl lost both arms in an accident and a large of number of sympathetic people responded to newspaper appeals by forwarding monetary donations to a permanent fund.
A dispute ultimately developed between the girl's family and the trustees over disbursements from the fund. Because there was no formal declaration of trust, it was necessary to ascertain the motivation of the donors. The Michigan Court looked to the published media appeals for donations. As the media appeals involved solicitations for the girl's long-term welfare, the Court concluded that the donors intended to vest a beneficial interest in the child.
In this case, the Gonzalez family and its medical expense dilemma was featured in news articles originally published in the Vineland Times Journal. A copy of the featured article has been filed with this court as part of the Petitioner's motion. The article did not encourage donations for Maribel Gonzalez *462 and other leukemia victims in need of bone marrow transplants. Nor did this article encourage donations to the Gonzalez family as a whole to assist in the entire family's future financial needs. The article was solely directed at a solicitation of donations to defray one operative procedure for one specified beneficiary. Thus, a resulting trust must arise as to the surplus funds on deposit in the defendant bank. In re Voorhees, supra, 93 N.J. Super. at 298, 225 A.2d 710. "Where the trust fails after part of the fund has been expended, or where the trust is fully accomplished and a surplus remains, the balance will be distributed pro rata among the contributors." 4A William F. Fratcher, Scott on Trusts, § 430.3. (4th Ed. 1989).
The moving papers establish that although records were maintained as to donations received by the Fund, which identify some of the contributors, there were numerous anonymous donations. So too, the passage of time may create administrative difficulties in locating the present whereabouts of some contributors whose identities were known in 1987.
Research has not revealed any specific authority governing the distribution on a pro-rata basis of trust funds where the identity of the original donors cannot be ascertained. However, In re Gillingham Bus Disaster Fund, 1 Ch. 300 (1958), decided in the United Kingdom, is helpful. In Gillingham, the English Court ordered a judicial inquiry be conducted to determine the identity of anonymous donors or the whereabouts of donors whose addresses have changed. Without any other relevant precedent, this court will adopt this novel, but practical, approach.
To accomplish this inquiry, the court directs the trustees to compile a list of all donors and the last known address of each donor. A written inquiry shall be directed to each donor verifying the accuracy of the address and original contribution. Thereafter, the names of donors, and last known addresses who do not respond to the written inquiry, together with a general announcement to anonymous donors, shall be published in the Vineland Times Journal. The cost of advertisement shall *463 constitute an administrative expense chargeable against the funds on deposit.[2] At the completion of the inquiry, under court supervision, the funds shall be paid on a pro-rata basis to the identified donors. The balance of the Fund, constituting the pro-rata share of all unidentified donors shall be payable into Court. At the conclusion of six months from the date of advertisement, all claims by unidentified donors shall be barred and the then existing balance will again be distributed on a pro-rata basis among the same group of identified donors who received the initial distribution.
For the reasons expressed, the plaintiff's motion to compel the payment of the Fund to the plaintiff, as the widower of Maribel Gonzalez, is denied, and the defendant's cross-motion for distribution of the funds to the National Leukemia Foundation is also denied. Counsel for New Jersey National Bank shall submit an appropriate order.
NOTES
[1] Not for some large community purpose.
[2] It is anticipated that the corpus shall be reduced by any award of counsel fees and costs granted hereafter pursuant to appropriate motion.